(Decided 22d June, 1871.)

---

WASHINGTON A. PAGE *vs.* MAYOR AND CITY COUNCIL OF BALTIMORE.

*Jurisdiction of the Court of Appeals to revise proceedings of the Baltimore City Court, on appeals from the Street Commissioners—Jurisdiction of the Baltimore City Court on appeals from Street Commissioners — Notice given and Oath taken by Street Commissioners—Condemnation of Private property to Public use.*

An appeal will lie from a decision of the Baltimore City Court in proceedings on an appeal to that Court from the Commissioners for Opening Streets.

The Baltimore City Court upon an appeal to it, from the Commissioners for Opening Streets, has authority to review any irregularity in the proceedings of the commissioners.

In the absence of proof showing that legal notice was not given of an application for the passage of an ordinance for widening a street, the Court will presume that the requirements of the law were complied with, and that the Mayor and City Council of Baltimore acted within their authority in passing the ordinance.

The Street Commissioners of Baltimore have authority to give the notice . required by section 6, Ordinance 26, 1866, of M. & C. C. of Baltimore, in relation to the opening and widening of a street, before taking the oath required by the 2d section of said Ordinance.

The Acts of 1796, ch. 45, and 1805, ch. 84, authorized the owners of lots on Light street, in Baltimore, to extend wharves into the basin to a certain line, and provided that 60 feet "of said wharves when so made out and extended at the end thereof, parallel with the line of Forest street, shall be deemed, taken and considered as a public highway forever thereafter, reserving nevertheless to the proprietors of said wharves the benefit and advantage of the wharfage thereof, under the limitations aforesaid." HELD:

That these Acts established an incomplete, qualified and limited highway over the wharves, and it was competent for the city authorities to condemn the rights still remaining in the proprietors.

APPEAL from the Baltimore City Court.

The facts are given in the opinion of the Court.

At the trial below, the following bills of exception were taken:

*First Exception:* The appellant in order to prove that he had not been benefited by the condemnation of the parcels of ground, mentioned in the proceedings of the Commissioners for Opening Streets as having been condemned, offered in evidence the ordinances of the Mayor and City Council of Baltimore, of 1826, ch. 11, section 46, and Article 22, section 46, of the Baltimore City Code. The Court refused to admit the testimony and the appellant excepted.

*Second Exception:* The appellant offered to prove that the strip or parcel of ground attempted to be condemned under

the proceedings of the Commissioners for Opening Streets, was a part of the bed of Light street as originally condemned by virtue of the Act of 1805, ch. 84; and that the commissioners in their said proceedings have not widened Light street, from Pratt street to Lee street. The Court rejected the evidence and the appellant excepted.

The verdict and judgment being against the appellant, he took this appeal.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MAULSBY, GRASON, MILLER and ALVEY, J.

*Jno. P. Poe* and *R. J. Bouldin,* for the appellant.

This appeal is authorized by law, notwithstanding the Court below sat as an appellate tribunal. *Act of* 1852, *ch.* 77; *Act of* 1853, *ch.* 451; *Code of Pub. Gen. Laws, Art.* 29, *secs.* 53, 60; *Act of* 1865, *ch.* 141; *Cons. of* 1867, *Art.* 4, *sec.* 28; *Balt. City Code,* 835, *sec.* 9, *of Ordinance, No.* 17.

The jurisdiction of the Court below in cases of this description is not limited to the simple inquiry as to whether the assessments of the commissioners were correct or not; but it was bound to hear and consider any and all proper motions, and to admit any and all legal evidence, the object and effect of which were to establish that the Street Commissioners had not pursued the provisions of the law, by a compliance with which they could alone lawfully exercise jurisdiction in the premises, and that it therefore erred in refusing to hear the motion to quash, and in rejecting the evidence in the first and second exceptions.

In this case, the appellant upon appeal moved to quash the proceedings, because the appellees had passed the ordinance in question without giving the indispensable notice required by law; and because the commissioners had proceeded irregularly in several specified particulars, and because the street had already been validly condemned sixty years ago; and yet in the face of the decision in *Mayor, &c., of Balt. vs. Bouldin,*

23 *Md.*, 375, that such a review was legitimate and proper, the Court below refused to hear us on the ground that these objections could *not* be reviewed upon appeal, but that the appellant must seek redress elsewhere. *Methodist Church vs. Mayor, &c., of Balt.*, 6 *Gill*, 391; *Alexander vs. Mayor, · &c.*, 5 *Gill*, 383; *Richardson vs. Mayor, &c.*, 8 *Gill*, 433.

*Robert D. Morrison* and *I. Nevett Steele*, for the appellee.

It is contended for the appellee that the motion to quash was properly overruled for the following reasons:

The jurisdiction of Baltimore City Court in cases of this kind is limited and special, and is confined to the review of the assessments of the commissioners in those cases where an appeal is taken. Upon such appeal the validity of the ordinance, under which the proceedings of the commissioners were had, cannot be impeached, nor can evidence for that purpose be admitted. The case comes into Baltimore City Court, as a Court of Appeal, having a special statutory appellate jurisdiction, and the question of the validity of the ordinance being one, on which the commissioners do not and cannot pass judgment, it is not before the appellate tribunal, whose only function is to review the decisions of the commissioners. If the ordinance be invalid, the remedy of any person aggrieved by it, is by *certiorari*, injunctions, or actions of *trespass* or *ejectment*, in the Courts having jurisdiction under the State Constitution.

The alleged irregularities, so far from furnishing ground for quashing the proceedings, offer no impediment whatever to the exercise by the Court below of the jurisdiction conferred upon it by law, and which the appeal asks it to exercise, viz: the jurisdiction to ascertain by a jury trial the correct assessment. *Code of Public Local Laws, Art.* 4, *sec.* 837; *Stewart vs. M. & C. C. of Balt.*, 7 *Md.*, 500-515; *Mayor, &c., of Balt. vs. Porter*, 18 *Md.*, 301, 302; *Rundle vs. Mayor, &c., of Balt.*, 28 *Md.*, 361, 362; *Swann vs. Mayor, &c., of Cumberland*, 8 *Gill*, 150.

36                    v 34.

MARYLAND REPORTS.

Page vs. Mayor and City Council of Baltimore.

The fifth reason in support of the motion to quash assumes that under the Acts of 1796 and 1805, Light street wharf had been condemned as a public highway, and submits that therefore the ordinance of 1869 is invalid, because the Mayor and City Council can not authorize the condemnation for a street, of ground which is already condemned as a public highway. It will be found that the Acts of Assembly do not support this view. On the contrary, they distinctly recognize and protect the proprietary rights of the property owners who should make and fill out wharves, and reserves to them "the benefit and advantage of the wharfage thereof," and then declares the wharves a public highway. They were, therefore, a public highway only in a qualified sense and to a very limited extent, for the ownership of the soil, with the right to use them as wharves remaining in the riparian proprietors, it is manifest that this use of them might, and probably would, so obstruct their use as a public highway, as to render the right of way of little value. *Act of* 1745, *ch.* 9, *sec.* 10; *Act of* 1796, *ch.* 45, *sec.* 3; *Acts of* 1801, *ch.* 92; 1805, *ch.* 84.

GRASON, J., delivered the opinion of the Court.

Under ordinance 7, of 1869, entitled "An Ordinance to condemn and widen Light street, &c.," the Commissioners for Opening Streets, gave notice, on the 9th day of September, 1869, in three daily newspapers, published in Baltimore city, that they would meet at the hour and place therein appointed, on the 12th day of October, 1869, and then and there proceed to execute the powers and perform the duties assigned to and required of them in regard to condemning and widening Light street, from Pratt street to Lee street, in accordance with said ordinance. They met in pursuance of the notice, and qualified by taking and subscribing the oath prescribed by the second section of ordinance 26; and the clerk and surveyor, employed by them, also took and subscribed the oaths required of them respectively, by the fourth section of ordinance 26. The commissioners then pro-

ceeded to discharge their duties under the ordinance of 1869, and assessed against the appellant the sum of $1,137.50 as benefits in respect of two lots owned by him in the vicinity of the improvement. Being dissatisfied with the amount of benefits assessed against him, the appellant appealed, within time, to the Baltimore City Court, and there moved to quash the proceedings of the commissioners, and assigned five reasons therefor. The motion was overruled, and he then offered the evidence set out in his first and second bills of exception, and it was rejected, and the verdict and judgment being against him, he appealed to this Court.

The first question to be decided is, whether, in a case like this, an appeal lies to this Court from a decision of the Baltimore City Court upon matters of law. By the Act of 1852, ch. 77, section 1, an appeal is expressly given to this Court from the Criminal Court of Baltimore city, to which Court alone appeals from the Street Commissioners were at that time authorized by law. The Act of 1853, ch. 451, section 1, provided for appeals from the commissioners to the Supeperior Court also, and the second section authorized an appeal to the Court of Appeals from a decision of the Superior Court upon any matter of law; and the Act of 1865, ch. 141, prescribed the time for hearing such appeals in this Court. The Constitution, Article 4, section 28, vests the City Court with exclusive jurisdiction of all cases arising under the ordinances of the Mayor and City Council, and to that Court alone do appeals now lie from the Street Commissioners; and appeals from that Court are provided for by the ninth section of ordinance 26. In the case of *Rundle vs. The Mayor and City Council*, 28 *Md.*, 357, this Court decided that the jurisdiction of the Criminal Court of Baltimore city was a special appellate jurisdiction, conferred by statute, and applied to that case the general rule that an appeal would not lie from such a jurisdiction to this Court, unless it was given by statute. That case was not argued in this Court, but was submitted upon the briefs, in which the Act of 1852 was not

cited or referred to, and the case was decided without refer-
ence to that Act, and the appeal was accordingly dismissed.
But there is no doubt that an appeal in such cases, is pro-
vided for by statute, and the counsel for the appellee did
not attempt to controvert this in his argument in this Court,
In overruling the motion to quash, the Court below assigned,
as its only reason therefor, that the jurisdiction of that Court,
upon an appeal from the Street Commissioners, is special and
limited, and confined to a review of the assessments made by
them, and that it has no authority or jurisdiction to review
their proceedings in other respects, and stated, in its opinion,
that if the Mayor and City Council, or the commissioners,
have exceeded their authority or otherwise violated the pro-
visions of the Acts of Assembly, relief can be had only in a
Court of Equity.   There is no doubt that, where an ordi-
nance is void, and its provisions are about to be enforced, any
party, whose interests are to be injuriously affected thereby,
may, and properly ought, to go into a Court of Equity, and
have the execution of the ordinance stayed by injunction.
This course of proceeding has been sanctioned and approved
by this Court in numerous cases, of which it is only necessary
to cite *Holland vs. the Mayor and C. C. of Balto.*, 11 *Md.*, 187 ;
*Bouldin vs. Mayor and C. C. of Balto.*, 15 *Md.*, 18 ; *Mayor &*
*C. C. of Balto. vs. Porter*, 18 *Md.*, 284.   But where there is
an appeal given to the parties, to be affected by proceedings of
Street Commissioners, any irregularities in the proceedings,
or in the qualifications of the commissioners, are open upon
appeal, and the appellate tribunal is the proper one to review
and correct them.   In the case of *The Methodist Prot. Church*
*vs. The Mayor & C. C. of Balto.*, 6 *Gill*, 402, a bill for an
injunction was filed, in which, among other things, it was
charged that the Commissioners for Opening Streets had not
given the notice required by law, before proceeding to widen
the street in question, and upon appeal, Judge DORSEY, in
delivering the opinion of this Court, said : "To persons ag-
grieved by the proceedings of the commissioners, in cases like

the present, the legislative enactments upon the subject have provided the tribunal and the means of redress, and there only can it be successfully sought."

The same doctrine was held in the case of *The Mayor & C. C. of Balto. vs. Bouldin,* 23 *Md.,* 375, in which this Court say : "The objections made to the legality and regularity of the proceedings of the commissioners under the second and fourth sections of ordinance No. 17, are such as could have been reviewed by appeal under the ninth section of that ordinance," and refers to 8 *Gill* and quotes Judge DORSEY's language as applicable to the case then under consideration.

One of the objections urged against the legality of the proceedings in that case was, that the commissioners had not given the required notice before proceeding to act, and that was an irregularity which, this Court held, could be reviewed upon appeal. In the case of *The Mayor & C. C. of Balto. vs. Porter,* 18 *Md.,* 301, while this Court decided that the proceeding in that case was properly in a Court of Equity, because the acts of the commissioners were void because the ordinance under which they acted was passed without authority, yet this Court said, that where the commissioners act within the scope of their authority, and the acts complained of are irregularities, they are "subject to be reviewed on appeal by the tribunal appointed by law for that purpose." From these decisions, it is evident that the City Court, upon appeal from the Street Commissioners, has power and authority to review any irregularity in the proceedings of the commissioners, and, therefore, erred in declining to entertain the motion to quash, made by the appellant in this case. It, therefore, becomes necessary to determine whether the grounds set out in the motion to quash are good and sufficient. The first and second are, that legal notice was not given that an application would be made for the passage of the ordinance of the 20th of February, 1869, under which the proceedings in this case were had. There was no proof whatever offered to show that the notice was not given as the

law requires, and in the absence of proof we must presume that the requirements of the law were complied with, and that the Mayor and City Council acted within their power and authority in passing the ordinance.

The third reason assigned is, that the commissioners did not severally take and subscribe the oath or affirmation before they proceeded to act as a board in the exercise of the powers confided to them, as required by the 2d section of Ordinance 26, of 1866. The Street Commissioners are officers of the city government, appointed annually as other city officers. See *section 1 of Ordinance* 26. Section 2 of that Ordinance provides that, in each and every case, before they shall proceed to act as a board in the exercise of the powers confided to them by that or any future ordinance, they shall severally take and subscribe the oath in that section prescribed. It thus appears that, although holding their office for one year, they are required to take and subscribe the oath in each and every case in which they may be required to act. The 6th section enacts that, whenever they may thereafter be required by ordinance to open, extend, widen, straighten or close any street, &c., in whole or in part, they shall give at least thirty days' notice, in at least two daily newspapers of the city, of the object of the ordinance, under which they are about to act, and the day, hour and place of their first meeting under said ordinance. An examination of the provisions of these two sections leads irresistibly to the conclusion that, as officers of the city government, they have authority to give the notice before taking the oath, and that if they take and subscribe the oath before acting in the particular case, the requirements of the ordinance are fully gratified. If they met and qualified before giving the notice, the notice given would be of their second, instead of their *first* meeting as directed by the 6th section. It appears from the book of proceedings of the commissioners, filed in this Court by the agreement of the parties, that the oath severally taken and subscribed and the notice given by them are in all respects in conformity with the requirements of the law.

The clerk and surveyor employed by them also took and subscribed the oaths required to be taken and subscribed by them respectively, at the same time the commissioners did, and what has been said with respect to the qualification of the latter applies with equal force to the qualification of the former.

The only other ground assigned for quashing the proceedings is that contained in the fifth reason, viz: "that Light street wharf, from Pratt street to Lee street, for many years prior to the passage of the ordinance of the 20th of February, 1869, under which the proceedings in this case were had, was and had been and still is a public highway, having been condemned by virtue of an Act of Assembly passed in 1796, ch. 45, and by Act of 1805, ch. 84." The Act of 1796 authorized and empowered the owners of lots at the head of the basin and binding on Light street, to make out and extend wharves into the water opposite their respective lots, to a line drawn from the east side of Light street to the east side of Forest (now Lee) street, and provided that "eighty feet of said wharves, when so made out and extended, at the end thereof, parallel with the line of Forest street, shall be deemed, taken and considered as a public highway forever thereafter, reserving nevertheless to the proprietors of said wharves the benefit and advantage of the wharfage thereof, under the limitations aforesaid." The Act of 1805 contained similar provisions, but limited the highway to sixty feet instead of eighty, and also reserved the benefit and advantage of the wharfage to the proprietors. It is very evident from these Acts that the whole of the rights and interests of the proprietors of the wharves, thus made out and extended, were not condemned for the public use, although sixty feet of the wharves were declared to be a public highway; for even over the sixty feet the proprietors were expressly authorized to exercise the rights of wharfage. The right to use the wharves and receive the wharfage having been reserved to the owners, that part of them, declared to be a public highway, was a public highway in a qualified sense and to a limited extent

Page *vs.* Mayor and City Council of Baltimore.

only as their use as wharves must, necessarily, have so interfered with the rights of the public as to have rendered them of little use or value as a highway. The damage plat, used and referred to in the argument of the case in this Court, shows that only twenty-six feet (including ten feet for a footway) were to be used exclusively as a street, and that the remainder was to be used as wharves only, and it may therefore be inferred that this was a compromise of the conflicting claims of the wharf owners and the city. The Acts of 1796 and 1805 show that the highway by those Acts established over the wharves was incomplete, qualified and limited. It was therefore competent for the city authorities, for the purpose of having a street at that place adequate to the wants of the public, to condemn the interests and rights still remaining in the proprietors of the wharves. We think that there is therefore no force in the objection contained in the fifth reason, and that the motion to quash ought to have been overruled.

From what has already been said, it follows that there was no error in the rejection, by the Court below, of the evidence set out in the two bills of exception. The object in offering that evidence was to show that the wharves to be condemned under the ordinance of 1869, had already been declared to be, and recognized and treated as a public highway, and that there was therefore nothing to be condemned under the ordinance of 1869. We have shown, however, that there were still proprietary rights in the wharves liable to condemnation and the evidence was therefore inadmissible, and was properly rejected.

The Court below erred in supposing it had not jurisdiction, upon an appeal from the Street Commissioners, to review any irregularities in their proceedings; but as the motion to quash ought to have been overruled, and as the evidence offered by the appellant was inadmissible, the judgment must be affirmed.

*Judgment affirmed.*

(Decided 22d June, 1871.)