THE PEABODY HEIGHTS COMPANY OF BALTIMORE *vs.* JOHN P. SADTLER, Trustee.

*Ejectment—Construction of Deed—Description—Road-bed.*

The owner of a large tract of land called H. divided it into lots, with roads running along their sides, and between them. By valid conveyances S. became entitled to lots on each side of one of these roads. Subsequently the road was closed. The deed to S. for one of said lots described the lot as beginning at a cer-

tain stone planted in the presence of S., J. C., and C. R. C., on the south-west side of a certain road and running from said stone, along and with the said road so many degrees, &c. to another stone planted in the presence of said parties on the south-east side of another road, then with the said last mentioned road, &c., to another stone planted on the north-east side of another road, thence with said last mentioned road, &c., to a stone, &c. The deed stated that the description was taken from an original plat which it identified; and also stated that the roads mentioned in the lot as sold to S. were laid out for the accommodation of the purchasers of the H. property, and that the said plat showed the location of said roads. The corners of the lot were distinctly marked by stones, and the lines connecting the corners were run in straight courses. The number of acres conveyed was stated with the quali-fication "more or less," and the consideration was stated to be so much per acre. In an action of ejectment against S., it was HELD:

That by a fair application of the authorities to said deed, the beds of the roads were not included in it.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Winfield J. Taylor*, for the appellant.

*Frederick W. Story*, and *John T. Morris*, for the appellee.

BRYAN, J., delivered the following opinion, which was concurred in by Judges YELLOTT and STONE:

An action of ejectment was brought by the appellant against the appellee. It was tried before the Court with-out a jury, and the questions in the case depended on the construction of two deeds of conveyance. Harry Dorsey Gough and his wife were seized in fee of a tract of land

in Baltimore County called Huntington, which, in the latter part of the last century they divided into lots, with roads running along their sides and between them. The appellee became entitled, by valid conveyances, to lots on each side of one of these roads; and the road having been closed many years, he claims title to the bed of it lying between his two lots. He deduces his title from Charles R. Carroll, who had become entitled to all the estate of Gough and wife to the said lots, and also to such interest as they had in the bed of the road between them. In 1839 Carroll conveyed to Philip B. Sadtler one of these lots which was bounded on one side of the road in question, and in 1844 he conveyed to Robert G. Ware a tract bounding on the other side of the road, which included the other of these lots. The agreement of counsel states that the road is "now closed, and right of way over the same by all parties abandoned." It was, in fact, closed many years ago by order of the County Commissioners of Baltimore County; the date of the order is not stated in the record, but one of the briefs states that it was passed in December, 1858. The appellee by *mesne* conveyances has been invested with such title to these lots, and the road between them as was conveyed by Carroll by the deeds above mentioned; and the appellant by virtue of a deed from Preston, trustee, dated November 23, 1882, has acquired all the title to the bed of the road, which remained in Carroll after the execution of the deeds to Sadtler and Ware. A portion of the bed of this road is the subject of this controversy. It becomes necessary to consider the effect and operation of these deeds. The deed to Sadtler describes the lot as beginning at a certain stone, planted in the presence of Sadtler, James Carroll, and Charles R. Carroll on the southwest side of a road leading to Thomas L. Emory's, and running from said stone, along and with the said road, &c., to another stone, planted in the presence of the said parties on the southeast side of another road,

then with said last mentioned road, &c., to another stone, planted on the northeast side of another road, thence with the said last mentioned road, &c., to a stone, &c. The deed states that the description is taken from an original plat of a part of Huntington, made out and signed by James Baker on the sixteenth day of May, 1809, and lodged in the clerk's office for Baltimore County for safe-keeping; it also states that "the roads mentioned in the lot as above sold to Philip B. Sadtler were laid out for the accommodation of the purchasers of the Huntington property, and the said plat, so made out by James Baker, shows the location of the said roads." The corners of this lot are distinctly marked by stones, and the lines connecting the corners are run in straight courses; and the quantity of land conveyed is said to be eighteen acres three-quarters and twenty-one perches, more or less; and the consideration is stated to be $130 an acre. It must be seen that the literal description of the property in the deed does not include any portion of the beds of the roads.

The Courts have laid down rules for ascertaining the rights involved in cases of this description. Chancellor KENT states the law in this way: "The established inference of law is, that a conveyance of land bounded on a public highway carries with it the fee to the centre of the road, as part and parcel of the grant. The idea of an intention in the grantor to withhold his interest in a road to the middle of it, after parting with all his right and title to the adjoining land is never to be presumed. It would be contrary to universal practice; and it was said, in *Peck vs. Smith*, 1 *Conn.*, 103, that there was no instance where the fee of a highway, as distinct from the adjoining land, was ever retained by the vendor. It would require an express declaration, or something equivalent thereto, to sustain such an inference; and it may be considered as the general rule, that a grant of land bounded on a high-

way or river carries the fee in the highway or river to the centre of it, provided that the grantor at the time owned to the centre, and there be no words or specific description to show a contrary intent. But it is competent for the owner of a farm or lot, having one or more of its sides on a public highway, to bound it by express terms on the side or edge of the highway, so as to rebut the presumption of law, and thereby reserve to himself his latent fee in the highway. He may convey the adjoining land without the soil under the highway, or the soil under the highway, without the adjoining land. If the soil under the highway passes by a deed of the adjoining land, it passes as parcel of the land, and not as an appurtenant." 3 *Kent Comm.*, 433. And the learned Chancellor's opinion is sustained by the current of the authorities. Among them we may mention *Simpson vs. Dendy*, 8 *Common Bench, N. S.*, 433, (98 *E. C. L. R.*) ; *Berridge vs. Ward*, 10 *Common Bench, N. S.*, 400, (100 *E. C. L. R.*) ; *Banks vs. Ogden*, 2 *Wallace*, (*S. C.*), 57. It is stated in *Angell on Highways*, 388, as the fair conclusion from the authorities that a grant of land described as bounded generally " *by*," or " *on*," or " *along* " a highway, carries the fee to the centre of the highway, if the grantor owned so far ; and, on the other hand, where the descriptive words are " *by the side of*," " *by the margin of*," or "*by the line of*," or expressions equivalent thereto, the soil of the way is excluded. This rule, however, has not uniformly prevailed. A majority of the Court hold that according to the fair application of the authorities to the deed in question, the beds of the roads are not conveyed by it. The writer of this opinion is constrained to come to a different conclusion. There has been a good deal of discussion in the Courts about the construction of the particular phrases which describe the lines of tracts bordering on highways, and a considerable diversity of opinion has prevailed. But whether the bed of an adjoin-

ing highway is included in a conveyance of land, or is excluded from it, is in all cases a question of construction; and the deed must be construed according to the intention of the parties, if it appears from the language used, and the attendant circumstances. If the roads had been mentioned in general terms, as boundaries of the lot in question, there is no doubt that the title would have been conveyed to their centres. We must endeavor to ascertain the fair interpretation of the language actually used in connection with such circumstances as manifest the intention of the parties. The proprietors of Huntington laid it out in lots, and ran roads through it. They also caused a plat to be made of the property and lodged it in the office where the public land records were kept. In this place it would be apt to attract much attention, and would be open to the inspection of all persons who might wish to examine it. The object of the proprietors was to promote the sale of their property. It would bring a higher price by selling it in lots, than could be obtained for it, if sold in one body; and the existence of the roads would, of course, enhance the price of the lots. It is one of the statements of the deed that these roads were laid out for the accommodation of the purchasers of the Huntington property. The proprietors either intended that the purchasers should acquire the title to these roads; or that they themselves should retain the bare naked fee in them, and permit the purchasers to have the permanent right of way over them. Let us consider that the roads could not be closed without the consent of the owners of the lots, and that while they were open, the fee could not be of the least possible benefit to the original proprietors. There could be no reasonable object in retaining this merely nominal fee. The remote and improbable contingency that the purchasers of the lots would gratuitously surrender the valuable privilege of using these roads could hardly have entered into the contemplation of the pro-

prietors of the tract when they were seeking to sell it. On the other hand, they naturally wished to offer the tract under circumstances which would hold out the greatest inducements to purchasers; and naturally they would not reserve from the sale a title which would be of no benefit to themselves, but which would considerably diminish the value of the lots in the hands of the purchasers. The object was to obtain the best price, and to convert into money the whole tract, and every interest and title connected with it. The roads were designed to make the tract sell at a high price, and were not laid out with any purpose of reserving an interest in them for the benefit of the proprietors. Such being the intention in preparing the tract for sale, and, in selling it, the deeds of conveyance ought to be construed so as to carry this intention into effect. The deed in question then would convey the title as far as the centres of the several roads described as the boundaries, subject to the right of way on the part of the other purchasers of the lots embraced in the tract. The corners of the lot, and its lines designate the limits within which the grantee acquired, the right of exclusive occupancy, and the number of acres mentioned in the deed shew the same thing. But, although this exclusive occupancy did not include the bed of the road, the grantee acquired a title in fee to it as far as the centre, subject to the right of way on the part of the other purchasers of the Huntington property. And when the road was closed, they, of course, held the road-bed discharged from this easement. The deed to Ware ought to receive a similar construction. I, therefore, think that the appellant acquired no title to the road-bed in controversy by the deed from Preston, trustee. But as a majority of the Court hold that this deed conveyed the title in fee, their opinion must prevail.

I have referred to the law of highways, but I do not mean to intimate that these roads were public roads.

They were originally laid out as private roads for the use of the purchasers of the Huntington property. There is no evidence in the record that they afterwards became public roads; although such may be the case, and we might conjecture that it is so, as we are informed that they were closed by the order of the County Commissioners. The questions which have been discussed do not depend on their public or private character.

The cases of *White vs. Flannigain*, 1 *Md.*, 525, *Moale vs. Mayor*, &c., 5 *Md.*, 314, and others on the same subject, have been duly considered. The questions decided in these cases in many of their aspects refer especially to the streets of towns and cities and not to roads in the country; but these decisions do not deny to the purchaser of a lot binding on a street the right of acquiring the fee in the bed of the street, and if the fair interpretation of his deed shews an intention to convey this title, the construction must prevail.

We are all of opinion that the just construction of the agreement between the counsel did not affect the right of the appellant to bring this suit. As a majority of the Court think that the Circuit Court erred in its construction of the deeds of conveyance, the judgment must be reversed.

*Judgment reversed, and*
*new trial awarded.*

(Decided 29th May, 1885.)

IRVING, J., delivered the following opinion, which was concurred in by Chief Judge ALVEY, and Judges MILLER and ROBINSON:

The facts of this case are sufficiently stated by Judge BRYAN in his opinion; but, in addition to his statement of the view of the majority of the Court, from which he dissents, it seems important to add a few words in further

Peabody Heights Co. *vs.* Sadtler.

explanation of the ground upon which they rest the reversal of the decision by the Court below.

The deed, upon which the question arises, falls squarely within the qualification of the general rule as it is stated by Chancellor KENT, and by *Angell* in his book *on Highways* in the quotations made from those authors by Judge BRYAN. We do not think a better illustration of the exception made by those authors, to the ordinary rule, that when land is bounded by a road, it goes to the middle thereof, could be found, than that which is supplied by this deed. To our apprehension, a clear and *unmistakable intention* is expressed that the title *shall not extend* to the middle of the road. Bounders were settled by the side of the road by the parties (in each other's presence,) and the deed calls for those bounders, and the lines end at them. By literal and exact description the road-bed is excluded. The precise quantity of land contained within the metes and bounds thus given, is minutely stated and paid for accordingly at a certain rate per acre. By restrictive language the grantee is confined within certain well defined boundaries. The recital of the fact, that the road which was mentioned was laid out for the "accommodation" of the lot owners, clearly implies that the use *only* of the road was to be accorded by way of "accommodation," and that the road-bed was not conveyed. This inference is irresistible. Had another intention existed, very different language would have been employed. If the opening of the road was not the act of the owner of its bed, there would have been no mention made of it, but the road would have been included in the conveyance. The allowance of its use was to be outside of and independent of the grantor's title by the deed. In an action to recover possession by the grantor under the deed, being put by the pleadings to location, the *calls* by all Maryland authorities would control, and the lines could not be extended beyond the bounders (unless there

was language expressly or by necessary implication requiring such extension, which we cannot find.) This title paper is wholly unambiguous, and no room is left to theorize about intention. Its language clearly indicates the intention, and is conclusive of the question. If it was expressed in different and less explicit terms, speculation as to the probability or improbability of the road-bed ever becoming valuable, and its effect on the grantor's mind, might aid in getting at the intention, and in construing an obscure paper. But such unequivocal terms of description are used in defining what was sold, and granted, as to unavoidably exclude the road-bed from the grant; and we see nothing to justify a construction which will include it.