## CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed February 14, 1894.

SARAH VAN WITZEN

VS.

BERTHA GUTMAN.

*W. Burns Trundle* and *Gans & Haman* for plaintiffs.

*Steele, Semmes & Carey* for defendant.

WICKES, J.—

The bill filed in this case charges the defendant with obstructing the plaintiffs' private right of way over a part of Jew alley, in this city, setting forth at length the facts from which the plaintiffs aver this right, and the means by which the defendant has deprived them of the enjoyment of it.

Without pausing to trace the leasehold title to the property now in the possession of the parties to this controversy, in reference to which there is no dispute, suffice it to say that they hold under a common grantor, and that at the time the leases were executed by trustees duly authorized to make them, a plat was prepared and filed in the chancery proceeding under which the sales were made, in reference to which the original lessees took the property. This plat shows that the parcel of ground so disposed of was divided into eighteen lots, bisected by an alley called Jew alley, beginning at Lexington street and running south to what is now known as Marion street. Each one of these lots either binds upon or connects with this alley, which was unquestionably intended for the use of the lessees as a private way, by means of which they could reach either Lexington or Marion streets at their pleasure. Nor is there any doubt that, under these leases, the lessees took only to the edge of the alley, the fee remaining in the grantor.

Mrs. Bertha Gutman, the defendant, holds ten of these eighteen lots—five on the east side of Jew alley and five on the west directly opposite, both com-

mencing at the south end of the alley where it enters Marion street, and extending north to the line of Mrs. Van Witzen's property. Mrs. Gutman has also · purchased from the owners, and now holds, the fee in the bed of the alley opposite her lots.

The defendant admits the erection of a permanent wall on the bed of the alley so acquired, but avers her right to build it, because, as she alleges, the street or alley laid out on the "Trustee's · Plat of Sale" was dedicated to public use; was accepted by the city, and has been under its control and management and used as a highway for a long period of time, certainly more than twenty years. That the Mayor and City Council of Baltimore, under the power vested in them to close any part of a street or alley when the public welfare and convenience require, have by appropriate proceedings closed so much of the alley in question as binds on her, the defendant's property, and, having awarded and tendered to these plaintiffs such damages as were deemed just, have extinguished whatever private right of way they enjoyed over the south end of the alley, and that she, by virtue of her ownership of the fee, is entitled to use it as she deems best, discharged from the burden of any easement formerly created.

It may be regarded as settled law that when the owner in fee of a tract of land, has it surveyed and laid off into · town lots and streets and alleys, and sells and conveys the lots with reference to such map or plat, he not only dedicates the street to public use (45 Md. 524) but the right of the free use of the adjacent streets so laid out will pass to the grantees as apurtenant to their lots, and this easement so created, becomes as much property as the lot itself. The grantee in such cases is as much entitled to protection in the enjoyment of this appurtenant easement as he is in the enjoyment of the lot itself. Hence whatever injures or destroys this easement is to that extent a damage to the lot, and is as much a taking of his property under the constitution as if part of the lot itself were seized or detached.

Not only this, but the easement so acquired by the grantee stands upon the footing of an implied covenant from the grantor, that he, the purchaser, shall have the use of the designated streets, and this covenant both the grantor and those who claim under him are estopped from denying.

These principles applied to the admitted facts of the case, lead to the following conclusions:

(1) The City, by accepting Jew alley, which had been dedicated to public use and exercising control over it for more than twenty years, had converted it into one of the public streets of the city, subject like other highways to its jurisdiction and authority. 65 Md. 521.

· (2) The plaintiffs, who had acquired by their leases, a right of private way over the alley, were not deprived of this right by the public use, but it continued undisturbed by the act of the city in taking possession and control of it.

(3) The defendant, holding not only the leasehold but the fee, was estopped from denying the plaintiff's easement, unless it was extinguished by the city ordinance closing part of the alley. What, then, was the effect of this ordinance upon the rights in controversy?

The Legislature has conferred upon the city authorities the amplest power to open and close streets and alleys, or parts of them, whenever in their judgment the public welfare and convenience may require. It, of course, holds and exercises this right of eminent domain, subject to the constitutional right of the citizen, that his property can only be taken for *public use* on payment of just compensation, and cannot, in any event, be taken for *private use* on any terms. In pursuance of this power the Mayor and City Council, by an ordinance, approved May 3, 1893, directed the Street Commissioners to condemn and close all that part of Jew alley from the north side of Marion street to the south line of Mrs. Van Witzen's property, a· distance of seventy-three feet and seven inches. Benefits and damages were assessed—benefits of Mrs. Gutman; damages to the plaintiffs. From this assessment no appeal was taken, and the amount of damages has been tendered.

The proceedings are confessedly regular on their face, all the requirements of the law having been complied with.

But, say the learned counsel for the plaintiffs, the public rights in the alley were not inconsistent with the pre-ex-

isting private rights of the leaseholders, and the effect of closing part of the alley was simply to restore the *status quo* existing when the leases were made.

It is true, as the plaintiffs contend, that there were no condemnation proceedings to open this alley, and that the rights of the plaintiffs are unaffected to that extent. But as I understand the law as decided in this State, it matters little whether the street has been regularly opened and condemned as a highway, or whether its use as such, has been acquired by dedication. The rights of the city and the public are the same, and the street must be taken and considered as one of the highways of the city. McMurray vs. M. & C. C. of Baltimore, 54 Md. 103; Hiss and wife vs. R. W. Co., 52 Md. 242; Hawley vs. M. & C. C. of Baltimore, 33 Md. 270; M. & C. C. of B. vs. Bouldin, 23 Md. 328.

In the latter case the Court said "the distinction here made is between streets opened but not formally condemned as public, and streets which have been regularly condemned in pursuance of any law or ordinance. 'Condemned as public' must be synonymous with 'appropriated to the public' or 'streets belonging to the public,' the means being put for the end." Let it be once established or conceded as it seems to be in this case, that Jew alley was at the time it was closed a public highway of this city, and as such under the control of the authorities, and it is difficult to understand why, if condemnation proceedings in opening a street will extinguish private rights as is not disputed, the same result will not flow from condemnation proceedings in closing it. Certainly there is nothing especially sacred about an easement, but it may be extinguished like other property rights, by the proper authorities in the exercise of their power of eminent domain. 34 Md. 558, 35 Hun. 157, 106 Ind. 29, 4 Wis. 330.

In Peabody Heights Company vs. Sadtler, 63 Md. 533, the owners of a tract of land had divided it into lots with roads running between them. One of the deeds stated that the roads were laid out for the accommodation of the purchasers of the property. Subsequently one of these roads was closed by the county authorities, and the question before the Court was the ownership of the bed of the road. Said the learned judge who delivered the opinion, "but although this exclusive occupancy did not include the bed of the road, the grantee acquired a title in fee to it as far as the centre, subject to the right of way on the part of the other purchasers of the Huntington property. *And when the road was closed, they of course held the road bed discharged from this easement.*"

I am therefore of opinion that the effect of the condemnation proceedings closing Jew alley is to extinguish the plaintiff's right of private way over so much of it, and gives to the defendant, the owner of the fee, the right to use it discharged from this easement.

But this conclusion has been reached upon the assumption that the ordinance closing the alley was a valid exercise of the power of eminent domain vested in the municipal authorities. This, however, is strenuously denied by the learned counsel for the plaintiffs. It was directly charged by them in argument on the depositions submitted that the City Council, instead of closing this alley because of the public welfare and convenience, ordered it done for the purpose of enabling the defendant to build on the bed of it, and in reality and substance took the property—the easement of the plaintiffs, not from any public consideration, but in order that Mrs. Gutman might enjoy the unqualified and undisturbed use of the ground so vacated.

Certainly the well established principle of law is that the Legislature has no power in any case to take the property of an individual and pass it over to another without reference to some use to which it is to be applied for the public benefit. "This," says Judge Cooley, "is conceded on all hands."

And again, as stated by Lewis on Eminent Domain, Sec. 158, "it is manifest that the Legislature, in providing for the condemnation of private property, must determine in the first instance, whether the use for which it is proposed to make the condemnation is a public one. But this determination is not final. All the Courts, we believe, concur in holding that whether a particular use is public or not within *the meaning of the constitution, is a* question for the judiciary."

The necessity for keeping municipal corporations having a limited jurisdiction within the strict limits of their authority, and the power of the Courts to enforce this duty, are recognized by the Court of Appeals in M. & C. C. vs. Clunet, 23 Md. 467, and Alberger vs. Balt., 64 Md. 6.

Said Bartol, J., in the Clunet case, "if an ordinance were brought before us passed by the Mayor and City Council, manifestly not in the exercise of their discretion looking to the public welfare alone, but based upon considerations as the result of a bargain with individuals interested in the work, &c. * * * If such a case should arise, this Court would not hesitate to say, both upon the plain words of the Code, and upon the highest grounds of public policy, that such an ordinance would be null and void, notwithstanding *it might profess on its face to be passed for the public convenience alone.* In our opinion that is not the case with the ordinance now under consideration. The bill does not charge that there was any fraud in procuring its passage, or that it was based upon any corrupt or dishonest bargain between the Mayor and City Council and the parties named."

So that there is no doubt that an ordinance which takes private property for private use is illegal and void, and that whether property is taken for a public use is for the Courts to declare, and further that the face of the ordinance is not the exclusive guide, but that the illegality of the act may be shown by evidence *de hors* the ordinance itself.

But how and in what proceedings may this be done? As I understand the law, if the aggrieved party alleges irregularity in the proceedings of the City authorities in opening or closing streets, it may be inquired into on appeal to the City Court. If fraud or corrupt bargain is alleged by means of which the ordinance is void, but which does not appear upon its face, it may be directly assailed by bill in Equity making the city party defendant and asking the Court to restrain the execution of the ordinance.

Or if the ordinance shows on its face that it was passed for an illegal purpose and is therefore void, it may be quashed on motion in the City Court, or perhaps disregarded in any proceeding in which it comes in question, whether the city is a party to the suit or not. Page vs. M. & C. C. of Baltimore, 34 Md. 564. The learned counsel for the plaintiffs do not contest the second proposition for they say in their brief, "when an act is done which is within the power of the Mayor and City Council, it is quite true that act cannot be attacked except upon the allegation of fraud, and in a case of that kind it would be necessary to make the Mayor and City Council, against whom the fraud is charged, a party to the litigation."

But the contention is that although the ordinance is regular upon its face and all the formalities of law complied with in its passage, that the testimony submitted proves that the real purpose of the City Council was not to subserve the *public* welfare or convenience, but the private convenience and interest of Mrs. Gutman, and that therefore the ordinance is void, and may be disregarded in this or any other proceeding. It is likened to an unconstitutional act of the Legislature, and cases have been cited to show that such laws may be summarily dealt with. But in each and all of these cases, the defect was apparent upon the fact of the act itself, and the question was not whether the motives and purposes of the Legislature were good or bad in passing it, but whether they had or not transcended their power. But the ordinance in question does not contain a line or word to indicate that the City Council exceeded its authority in passing it, on the contrary it is admitted that the entire proceeding is in form at least strictly in accordance with the law. The real charge is *fraud*, not that the defendant and the council corruptly bargained, but that for some unexplained reason, the council took away the property of a private citizen to benefit the property of another private citizen, upon a pretext which they knew to be false.

This is a charge of fraud, pure and simple, and if it is to be inquired into, it ought to be alleged in the bill, and the city authorities made parties to the proceeding. I do not see how it can be investigated in this collateral way.

That question being excluded from consideration puts an end to the present inquiry. Whether the City Council

has wisely exercised the discretion confided to it, by ordering a part of Jew alley closed, is a matter with which the Courts have nothing to do. It is for them to say whether a street or alley shall be opened or closed, and in the absence of fraud properly disclosed, or of such irregularities as vitiate their act, the Courts have no power to order otherwise.

I am therefore of opinion, after a careful consideration not only of the very able arguments of counsel, but also of the many authorities to which they have directed my attention, that the plaintiff's bill must be dismissed with costs.