(Decided April 1st, 1897).

---

ALCAEUS HOOPER, MAYOR OF BALTIMORE, ET AL. *vs.* THE BALTIMORE CITY PASSENGER RAILWAY COMPANY.

*Street Railways — Municipal Corporations — Legislative Grant of Right to Use Electric Trolley System by a Railway Company Without Consent of the Municipal Authorities.*

The Act of 1890, chap. 271, authorized the appellee, a street railway company, to use upon any of its tracks in Baltimore City any motive power or means of traction which any other street railway company should be authorized to use. Subsequently, several other street railway companies were authorized to use and did use the electric trolley system. The Act of 1890, chap. 370, gave to the municipal authorities of said city power to regulate the use of the streets by railway and other companies, and also power to require electric wires to be placed under ground. *Held,*

1st. That the appellee was entitled to use electricity upon any of its lines under the legislative grant, and that this right could not be destroyed by the refusal of the Mayor to issue a permit for the erection of trolley poles.

2nd. That the appellee was authorized to use the trolley system, with overhead wires and poles, which are the distinctive features of that system, without the consent of the municipal authorities.

3rd. That the effect of the Act of 1890, ch. 370, was not involved in this case, since the municipality has not yet required all wires to be placed under ground.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), ordering the issue of a writ of injunction restraining the appellants—the Mayor of Baltimore and the Marshal of Police—from interfering with the construction of an electric trolley system on a certain line of appellee's railway.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*Thomas G. Hayes, City Counsellor,* and *Henry W. Williams,* for the appellants.

*Bernard Carter* and *Arthur W. Machen,* for the appellee.

FOWLER, J., delivered the opinion of the Court.

Nearly four years ago the Baltimore City Passenger Railway Company filed a bill in the Circuit Court of Baltimore City for an injunction to restrain the then Mayor of the city of Baltimore and others from preventing or obstructing the erection on Baltimore street, or any other street in the city of Baltimore, along the lines of any of that company's railway tracks, of suitable iron poles for the use of what is known as the "trolley system." To the bill just referred to the then defendants demurred. But after a full hearing this demurrer was overruled, and it was held in conformity with the opinion of the learned Judge below that the plaintiff was entitled to the relief prayed, that is to say, that the Baltimore City Passenger Railway Company had the right under its charter to use the trolley system of propelling its cars on Baltimore street, or on any other street in that city on which it had its tracks. From that decree no appeal was taken, and the railway company at once proceeded to introduce the trolley system on its Baltimore street and some other lines. Recently desiring to discontinue the cable system on its "Blue Line," and in its place to use the trolley system, it was preparing to make the change and for that purpose, in compliance with certain city ordi-

nances, permission was sought from and given to it by the City Commissioner to erect iron trolley poles, but the appellant as Mayor of Baltimore City refused to allow poles to be erected as requested. Whereupon the railway company filed the bill in this case, which makes substantially the same allegations that are made in the former bill, and also alleges that the appellant intended to make use of the authority of his official position and of his influence with the police of the city to prevent said company from making the desired change in its method of traction and motive power, and that such intended forcible obstruction of the proposed work was unlawful, not only because it was an unjustifiable interference with the rights and privileges of said company granted to it by the Legislature, but also because it was contrary to the decree passed in the former case.

The Court below ordered the injunction prayed for to issue, and the Mayor and the other defendants have appealed.

Although much was said at the hearing as to the binding effect in this case of the decree in the former case, and it was very earnestly contended by the appellee company that these appellants are concluded by it, we will not stop to consider any of the preliminary or technical questions arising out of the attempted application of the doctrine of *res adjudicata*, for we are all of opinion that conceding as contended by the appellants that the former decree has no force or effect whatever in this case, the facts appearing in this bill and the answer and exhibits, and the laws and ordinances by which the rights and duties of the respective parties are to be determined, fully warrant the decree appealed from. We will proceed to state the grounds of our conclusion.

The Baltimore City Passenger Railway Company, the appellee in this case, is the oldest company of the kind in the city of Baltimore, having been the first one incorporated by the Legislature of Maryland, (ch. 71 of the Acts 1861-1862). Ever since its incorporation it has owned and used

several railway tracks laid in the streets of that city.   Under its original charter the appellee was authorized to use only horses as a motive power, but by an amendment thereof by the Act of 1890, ch. 271, it was authorized to use improved methods of traction and motive power different from horses upon its railways, and to increase its capital for that purpose.   By the first section of this Act it was authorized to " use upon any or all of its railway tracks in the city of Baltimore, any cable system *or other system of propulsion by means of stationary engines,* any pneumatic motors, stored electricity motors, and *any motive power and means of traction which the Mayor and City Council may sanction, or which shall be authorized to be made use of in the city of Baltimore by any other corporation exercising street railway franchises therein.*"   Since the passage of the foregoing Act almost all, if not all, the street railway companies have been authorized to use the trolley system.   And in the case of the Traction Company the Legislature has by the Act of 1892, ch. 210, authorized it "to place and use upon any or all of its tracks" the trolley system.   Also by an Act of the same year, chapter 232, the Baltimore, Hampden and Lake Roland Company was given authority to propel its cars in certain streets by the same system.   It would seem to follow clearly from the Act of 1890, chap. 271, and the subsequent action of the city and the Legislature in authorizing the other companies to use the trolley system, that the appellee is by the very words of that Act empowered to use that system on " any or all of its tracks in the city of Baltimore."   But in answer to what appears to be the plain meaning of the Act in question, the appellants contend, first, that the Act of 1890, ch. 370, which was passed at the same session and approved on the same day as the Act of 1890, chapter 271, repealed or modified chapter 271, so that the right to use the trolley system conferred by the Legislature upon the appellee company cannot be exercised by it without the consent of the Mayor ; second, that even if the Act of 1890, ch. 271, gave to the appellee the power

to use the trolley system on its tracks in Baltimore City, the power so conferred " is limited to a grant of the *kind of motive power* which may be used, *and not to the mode and appliances to be placed in the streets* of the city in order to use such power ;" and third, that express power has been conferred upon the Mayor and City Council to require all telegraph, telephone, electric light or other wires to be placed under ground after such reasonable notice as they may prescribe.

1. It would seem to be too clear for controversy that the appellee has a right by virtue of legislative grant to use the trolley system whatever that may be. Nor is it to be supposed that the Legislature would grant this right, and that too in the language in which the grant is made to the appellee, and at the same time place it in the power of the Mayor to destroy this right, not by any affirmative action, but merely by refusing to give his assent to the erection of iron poles. The right to use this system is given to the appellee in two ways ; first, it may use any system of propulsion by means of stationary engines ; and second, it may use any system of propulsion which shall be authorized to be used by any other street railway company in Baltimore City. We cannot believe that the Legislature intended to give to the Mayor any such power as is claimed for him here. For, it must be remembered, that this is not the case of a corporation upon which the Legislature has merely conferred a franchise, the exercise of which in the city of Baltimore may depend upon the consent of the Mayor or of the municipality, but this appellee, by virtue of its charter, had been for many years before the Act of 1890, in the full exercise of its franchises in the streets of Baltimore, subject of course to the right of the city to regulate the use of its streets. If, therefore, as we have said, and as seems to us must be conceded, the Act of 1890, ch. 271, operated as a legislative grant to the appellee to use that something which is called the trolley system, it necessarily follows that the Mayor and City Council cannot qualify or abridge that

grant, nor, of course, could the Mayor alone, by refusing to issue a permit to place the poles, make that unlawful, which the Legislature had declared to be lawful. In the case of the *Point Breeze R. Co.* v. *Latrobe et al.*, 81 Md. 222, McSHERRY, C. J., delivering the opinion of the Court, it is said: "If the act to be done be a lawful one, and be sanctioned by legislative enactment   *   *   *   and if the persons or body corporate proposing to do it be duly empowered to perform it, the Mayor and City Commissioner cannot, nor can either of them, make the act illegal or prevent its performance by refusing to issue a permit."

2. But in answer to this view it is contended by the appellants that by a fair and reasonable construction of the Act of 1890, ch. 271, the Legislature conferred upon the appellee only the right to use a certain kind of motive power, and that the legislative grant did not include the mode of construction and appliances to be placed in the street, and, therefore, the Mayor has the right and it is his duty, under the circumstances of this case, to refuse to permit the appellee to do that which it has no right to do. We think, however, that this view and the distinction on which it is based is more ingenious than sound. It will be observed that the grant to the appellee includes both " any motive power," as well as " any means of traction " authorized to be used by the other companies. The motive power which the appellee proposes to use and which it is conceded it has been authorized to use is electricity, and the means by which that motive power is to be made available are stationary engines and overhead wires. This appellee has been for some years using on its Blue Line what is known and what is called in the Act of 1890, " The Cable System," which is generally understood to imply a stationary engine and an underground cable, and the " trolley system," which the Traction Company was authorized to use, and which, therefore, this company has the right to use, is just as generally understood to imply the use of a stationary engine and overhead wires strung on poles. We

cannot suppose that when the Legislature granted to the appellee the right to use the "trolley system," as it undoubtedly did, it did not intend to include in its grant the right to use overhead wires and suitable poles, which are. the distinctive characteristics of that system.  If we are correct in the meaning and force we have attributed to the expression "trolley system," it follows that when the Legislature gave the Traction Company permission to use this system on all its tracks in the city of Baltimore, it at the same time authorized the use of overhead wires and poles. We cannot suppose that a different meaning is to be attached to these words when construing the grant made to. the appellee.  Without discussing this question further, we think it very clear that the Legislature intended to permit the appellee to use the trolley system, and that this system as generally understood, and, therefore, as authorized to be used by the Act of 1890, ch. 271, includes electricity as a motive power and overhead wires and poles as a means of traction.  Legislative grants either to individuals or corporations are not to be weakened or destroyed by strained and unreasonable constructions of statutes, based upon ingenious suggestions and theories,  The right to use the trolley system granted to the appellee in express terms is not to be taken from it because in the opinion of the appellants some other system may be more desirable and safer ; nor because the Mayor refuses to do what it is his duty to do, namely,. to grant the permit which it was also the duty of the appellee to request.  If the trolley system is so dangerous to the public safety and so objectionable as was contended, the Legislature or the municipality, if power has been given to. it, and not the Mayor alone should correct the alleged evil.

3. It was also urged that if the Mayor or the city had not the power claimed for him, the Act of 1890, ch. 370,. which gave the city power to require all wires to be placed under gound would be nugatory.  But the effect of that Act is not in any manner involved in this case.  The power conferred by it has not yet been exercised, and the only

ordinance which thus far has been proposed to be passed in pursuance thereof, " to construct a general system of con-duits under the streets for the reception of wires," ex-pressly excepts trolley lines.    Doubtless when the city of Baltimore determines to exercise through its Mayor and City Council the power given it by the Legislature to order all wires to be placed underground, it will be able to do so without difficulty, but whether this be so or not, we cannot now determine.    It is sufficient for the present purpose to say that neither the appellee nor any of the railway com-panies using the overhead wires in Baltimore City have been yet required to place them under ground.

It follows that the decree appealed from must be af-firmed.

*Decree affirmed.*

(Decided April 1st, 1897).