## THE MAYOR AND CITY COUNCIL OF BALTIMORE, THOMAS G. HAYES, MAYOR ET AL. vs. THE BALTIMORE COUNTY WATER AND ELECTRIC CO.

*Statutory Right of a Water Company to Lay Conduits Within Territory Annexed to Baltimore City—Injunction.·*

A water company was authorized by statute ; to lay its conduits, etc., within certain territory which afterwards became a part of Baltimore City under the Annexation Act of 1888, ch. 98   That Act required the city to offer to purchase the property of the water company before extending its own pipes within said territory, and the new city charter (Act of 1898, ch. 123), declared that no vested right then existing should be impaired by its enactment.   The water company applied to the City Engineer for a permit to lay certain mains and pipes on a street within the designated territory and upon his refusal to issue such permit filed the bill in this case asking for an injunction to restrain the municipal authorities from interfering with the construction of the conduits by the company under the supervision of the City Engineer.   *Held,*

1st. That the right of the water company to place its mains and pipes within the designated territory was not impaired by the Annexation Act or by the new city charter and is still in force.   ·

2nd. That the writ of injunction is the proper remedy for the enforcement of said right.

Appeal from the Circuit Court No. 2, of Baltimore City (HARLAN, C. J.)   The prayer of the bill was for a writ of injunction against The Mayor and City Council of Baltimore, Thomas G. Hayes, Mayor of the city of Baltimore, and Thomas F. Farnan, Deputy Marshal and Acting Marshal of Police of the city of Baltimore and enjoining them and each of them and each and all of their subordinates, agents and officers from preventing, obstructing or in any way interfering with the construction by your orator or its employes, under the supervision of the City Engineer of Baltimore City, of the conduits and pipes upon the Old Frederick road, according to the application for a permit of the plaintiff.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE,· BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Olin Bryan* (with whom was *Wm. Pinkney Whyte* on the brief), for the appellants.

If the complainant company, under the powers of its charter, was entitled to extend its water pipes and mains under the streets, lanes and alleys in the annexed territory of Baltimore City, which formerly was a portion of the First Election District of Baltimore County, and it felt aggrieved by the refusal of the city officials to grant the permit for which application had been made, its only remedy was to petition a Court of law for a writ of *mandamus* to compel said city officials to issue said permit.    This case is not analogous to the case of the *Chesapeake and Potomac Telephone Company*, 89 Md. 716, because in that case there was a contract between the telephone company and the city.

Admitting for the sake of the argument that the Water Company had the right to open the streets within its territory (which we do not for a moment concede, however) it had that right only by complying with the police regulations of the city of Baltimore in reference to its streets, and the city charter as well, and it was its duty, before attempting to exercise such a right, to obtain at least from the city officials, the permit authorizing it to do so.    This it did not even do.    True it is alleged to be due to the fact that the Mayor and City Engineer refused to grant it, but certainly, it cannot be said, because the Mayor and City Engineer refused to grant that which the complainant company contends it had a right to have granted, that the complainant company could resort to a Court of equity to restrain the police authorities of the city of Baltimore from interfering with it in the exercise of certain powers, which powers could not be exercised lawfully until the permit had actually been obtained for the exercise thereof.    It was never intended by this Court to throw open the doors of equity for relief by · injunction of a mandatory character in cases where the right to do the thing had not been completed, but was conditioned upon obtaining something which had not been obtained, and which could only be obtained, if demanded, through a Court of law.    Here lies the distinction between the case of *Point*

*Breeze R. R.* v. *Latrobe*, 81 Md. 222, and the case now under consideration.

It certainly cannot be contended that there is a legislative enactment authorizing the complainant company to use the streets within the annexed territory, except in the manner and form prescribed by the city charter and the ordinances of the Mayor and City Council of Baltimore, and any attempt upon the part of said complainant company to use the streets without complying with the requirements of charter and the ordinances of said Mayor and City Council is a violation of law, and by the express language of the ordinance itself, subjects the company to a fine.

After the enactment of the new charter, the title to streets, lanes and alleys in this particular section of the city became definitely and inalienably fixed in the Mayor and City Council of Baltimore. Nor was this title clogged with any conditions, or subject to any prior liens or incumbrances. In other words, the complainant company had no right or title reserved to it after this territory had become a part of the city of Baltimore, and especially after the passage of the city charter. The Annexation Act, in which reference to this complainant is made, as also the city charter, do not reserve to the complainant company any right to use any of the streets in said territory, except in the manner and form provided by the city charter. The reservation made to the company is the right to have its pipes and other water appliances, which had been, prior to the city charter, laid in said territory, purchased by said city of Baltimore. To this, and this extent only does the reservation apply. There is nothing to show that there was any intention whatever upon the part of the Legislature to give to this company the right to use the streets within said annexed territory, as it saw fit, regardless of the requirements of the city charter. That its property rights already acquired should be protected, was fitting, and the Legislature so provided, but this, and this only, was the object of the Legislature, and it was never intended, nor can it be so read into the law, to give this company the right to open streets within the annexed territory

without having first conformed to the specific provisions of the city charter.

The continuance of the work of the company, after the approval of said charter, was dependent entirely upon its compliance with those sections of the city charter under the title of franchises, which necessitated this company applying to the Board of Estimates, and from said board to the Mayor and City Council, for an ordinance setting forth the terms and conditions upon which said franchise could be exercised within said territory.   This has never been attempted upon the part of the complainant company.   For this company to be permitted to go forward and use the streets, lanes and alleys in that portion of the city of Baltimore which formerly was within the First Election District of Baltimore County to such an extent as it sees fit, without complying with the provisions of the city charter would not only be a menace to the city, but would be destructive of large public rights, and subversive of the best interests of the city of Baltimore.   This position could never be reached unless by such clear and emphatic language as would admit of no other possible construction.

Therefore, apart from not having obtained the permit, to which reference has been made, this company has never been in a position to even lawfully ask for a permit, and hence had no right whatever to resort to a Court of equity by way of injunction to restrain the police authorities from interfering with it in its unlawful action within the limits of the city of Baltimore.

By the express words of the Annexation Act and of the city charter, the company is protected only to the extent of the territory occupied.   That is distinctly its limitation, and is not by either of said Acts authorized to go one step further, except in the way provided for by the charter.   Apart from this, the moment that the portion of the First Election District of Baltimore County became a part of Baltimore City, then *ipso facto*, the rights granted to the complainant company under its charter were repealed as to that particular portion of the First Election District of Baltimore County which

had become, by the Act of Assembly, the territory of Baltimore, because, by the express words contained in the charter of this company, it is only permitted to excavate streets and highways in the village of Catonsville and the First Election District of Baltimore County, and there is not one word, which can by any construction permit said company to invade the territory of the city of Baltimore, except to the extent, and that only of that particular portion of said First Election District of Baltimore County which said company had actually occupied by its pipes being laid upon the streets thereof prior to the point of time when said territory, to which it had the right under its charter, had become the property of the city of Baltimore, and the title to said territory, so far as the streets, lanes, alleys and avenues are concerned vested by statutory enactment in the Mayor and City Council of Baltimore ; and this right was limited to the use and maintenance of pipes already laid at the time of said annexation and the approval of the city charter, and conferred no authority upon the complainant company to extend the lines of pipe already laid or to lay new lines of pipe.

*Wm. S. Bryan, Jr.* (with whom was *A. deR. Sappington* on the brief), for the appellee.

By the consolidation of the Catonsville Water Company with the Chesapeake Electric and Water Company of Baltimore County, the appellee was formed.    The consolidated company had, by virtue of ch. 666 of the Acts of 1892, all the rights of each of the constituent companies in its former territory.  Apart from this express statute, the same result would follow from the general law.    *Green County* v. *Conness*, 109 U. S. 106; *Tennessee* v. *Whitworth*, 117 U. S. 147; *Philadelphia, etc., R. R.* v. *Maryland*, 10 How. 393; *Africa* v. *Board, etc.*, 70 Fed. Rep. 729, 739; 2 *Elliott on Railroads*, sec. 329; *Dodson* v. *B. & L. R. R.*, 77 Md. 491.

By ch. 100 of the Acts of 1886, the Catonsville Water Company had in distinct and unqualified terms the right to lay its mains, pipes and conduits in the First Election District of Bal-

timore County. By express words, it " could excavate the earth and lay pipes for water in the village of Catonsville *and the said First Election District of Baltimore County.*" This grant could not mean less than the right to excavate earth and lay pipes in every place in the district where the Legislature could authorize it to be done. No one can question the power of the Legislature over the highways and public roads of the State. 2 *Dillon on Municipal Corporations,* sec. 656. Therefore, this grant unquestionably gave to the Catonsville Water Company the power and authority to lay pipes in all the highways of Catonsville and also in all the highways in the territory which then (in 1886), constituted the First Election District of Baltimore County.

As the right to lay pipes in the public highways in this territory was given by the Legislature it can not be nullified or abridged in any way by the Mayor and City Council of Baltimore, unless such power is given in clear terms to the municipality. Any doubt as to the city's possessing this power, like any doubt as to its possession of any other power, is to be decided against the city. 1 *Dillon an Municipal Corporations,* sec. 91.

The right of the appellee to lay pipes and mains in the highways of what was originally the First Election District of Baltimore County has never in any manner been changed, diminished or modified. It still exists in all its integrity as originally granted. Article 4, sec. 930, Code of Public Local Laws, gives the city of Baltimore a general power to purchase the rights of any water company which is authorized to introduce water into the city. But the Annexation Act (Acts of 1888, ch. 98, sec. 25) is more explicit in requiring that the city authorities, *before* laying pipes along any street, road, etc., in the territory upon which the Catonsville Water Company had laid its pipes and other water appliances should (if the Water Company should desire to surrender its pipes and other appliances) pay the company their fair value. Then the new city charter (sec. 6, ch. 123, Act of 1898) requires the city of Baltimore to purchase and condemn the rights of any local

water company when it extends its own water. mains into the territory in Baltimore County served by such local company.

It is submitted that the preceding Acts were sufficient to preserve and protect all the rlghts of the Catonsville Water Company, but the new charter puts the intention of the Legislature beyond all doubt or cavil ; the city is not to be allowed *to.intrude into its territory* without first either purchasing or offering to purchase its rights.    The Legislature recognized the obvious fact that such intrusion of the city water mains into the territory of any water company would injure very seriously, if not entirely destroy, its business.    Therefore, as a matter of. fairness and justice, the Legislature required the city to condemn or purchase the plant of the company before doing a thing which would destroy its value. The Legislature of Maryland was unwilling to sanction the injustice of enabling the public authorities of Baltimore to take *covertly and indirectly* private property for public use without making just compensation therefor.

, The action of the authorities of the city of Baltimore is a bold attempt to. deprive the plaintiff of rights granted by the Legislature.    It is needless to say that this is illegal.

The obtaining of a permit from the municipal authorities is merely a. police regulation, reasonable and proper, for the purpose of insuring the conduct of public business in an orderly method and to conveniently enable the police authorities to know that persons digging up the streets and other highways have lawful authority for their action. . It has been expressly decided that in a case where the lawful authority to do any work in the public highways existed, the Mayor had no right or power to refuse the permit.    It was a purely ministerial duty to issue it. *State* v. *Latrobe*, 81 Md. 233, 234; *Chesapeake and Potomac Telephone Company* v. *Mayor*, 89 Md. 716 and 717.    If there could, at any time, have been any doubt as to the right of the Catonsville Water Company to extend its mains in the annexed territory, as its business might require, until the city exercised its option of purchasing its plant within city limits, this difficulty would be solved in favor of

the existence of such right on account of the long, uniform and , consistent contemporaneous construction placed upon these rights by the city authorities. *District of Columbia* v. *Orr*, 124 U. S. 505, 510; *Insurance Co.* v. *Dutcher*, 95 U. S. 273; *Jamesville Cotton Mills* v. *Ford*, 17 L. R. A. 569; *Nicoll* v. *Sands*, 131 N. Y. 19, 24; *Nickerson* v. *Atchison, T. & S. F. R. R.*, 17 Fed. Rep. 409; *Willcuts* v. *N. W. Mutual Life Ins. Co.*, 81 Ind. 300.

The city authorities· have, as already stated, in many ways and at many times, recognized the rights. of the Catonsville Water Company to prosecute its business and extend its pipes and mains in the annexed territory.

BRISCOE, J., delivered the opinion of the Court.

The bill in this case was filed on the 5th day of December, 1901, in the Circuit Court No. 2, of Baltimore City, by the appellee, The Baltimore County Water and Electric Company of Baltimore County against the appellants, the Mayor and City Council of Baltimore, Thomas G. Hayes its Mayor, and Thomas F. Farnan, Deputy Marshal and acting Marshal of Police, for an injunction, to restrain the appellants, from preventing, obstructing or in any way interfering with the laying of water-mains and pipes on certain streets in a portion of the city of Baltimore which was formerly a part of Baltimore County, but which was annexed to the city by what is known as the Annexation Act of 1888.

The appellee is a corporation formed by the consolidation of two companies to wit, The Catonsville Water Company and the Chesapeake Electric and Water Company of Baltimore County, and by articles of agreement dated the 7th day of May, 1900, succeeded to all the rights and powers of these two companies. The Catonsville Water Company was duly incorporated by chapter 100 of. the Acts of 1886. It will appear from an examination of this Act that by the second section thereof the Company was empowered to purchase, lease, hold, use and possess such lands, water-rights, powers and privileges, tenements, goods and chattels as may be nec-

essary for collecting streams of water, elevating, preserving, using and distributing the same, as the means of abundantly supplying with pure water the public and private houses, streets, squares, lanes, alleys and other places in the village of Catonsville and also in the First Election District of Baltimore County, and for properly disposing of the water and such other powers as may be necessary to carry into effect the purposes of this Act.

The fifth section of the Act provides that the company shall have power to purchase and lease property, real and personal, water-rights, powers, privileges, and to erect thereon all suitable reservoirs, dams, tunnels, conduits, fountains, engines and machinery, buildings and works of the company, to collect the water and dispose of the same for the purposes hereinbefore stated to excavate the earth and lay pipes for water in the village of Catonsville and the First Election District of Baltimore County.

The Chesapeake Electric and Water Company was formed by the consolidation of the Chesapeake Water Company and the Bay View Electric Light and Power Company of Baltimore County, by chapter 432 of the Acts of 1894.

On the 6th of April, 1901, the appellee made application to the City Engineer for a permit to lay certain mains and pipes in a certain portion of the First Election District of Baltimore County in order to extend its water business and to supply its customers, according to its alleged charter rights. This application was refused by the City Engineer of Baltimore City, and hence this proceeding. The Court below directed the injunction to issue, and the appeal is taken from this order.

The first question presented on the appeal is one of jurisdiction of the Court as to the remedy adopted. The appellants contend that the only remedy open to the appellee under the facts of this case was by petition to a Court of law for a writ of *mandamus* to compel the city officials to issue the permit. There is nothing in this case to distinguish it in any material way from the recent cases of *Chesapeake and Pot. Tele-*

*phone Co.* v. *Balto. City*, in 89 Md. 716 and 90 Md. 644, where it is held that injunction is the proper remedy.   The rule there stated had been adopted in a number of cases in this Court and elsewhere.   *Page* v. *Mayor, &c.*, 34 Md. 567; *Hooper* v. *City Passenger R. R. Co.*, 85 Md. 509; *State* v. *Latrobe*, 81 Md. 222.

The second contention relied upon by the appellants and the important question in the case, briefly stated, is this : Was the power and authority to lay pipes and conduits for water in the town of Catonsville and in the First Election District of Baltimore County, given the appellee by the Legislature of the State by the Act heretofore mentioned, repealed or impaired by what is called the Annexation Act of 1888, ch. 98, or by the adoption of the new city charter, Act of 1898, ch. 123, in so far as it relates to the annexed territory.

Now it is admitted that the territory involved in this dispute, and which formerly constituted a portion of the First Election District of Baltimore County, is now a part of Baltimore City. It is conceded that if the rights, privileges and franchises granted the appellee company in this annexed territory, have not been changed or repealed by subsequent legislation, they now exist as originally granted.   We have carefully examined and considered the several statutes (the Annexation Act, 1888, and the new city charter, 1898), relied upon by the appellants, and find nothing to sustain the contention urged by them in this case.   On the contrary, we are all of the opinion that by the express terms of the Act of 1888, ch. 98, sec. 25, the rights and powers of the appellee company are fully reserved and protected.   By the 25th section of this Act, it is clearly provided that before the Mayor and City Council of Baltimore shall lay any water pipes along any street, road, lane or avenue, in the territory mentioned in the second section of this Act, upon which the Catonsville Water Company has laid its pipes and other water appliances, the said Mayor and City Council of Baltimore shall, if said company desires to surrender said pipes and water appliances in such street, road, lane or avenue to the Mayor and City Council of Baltimore, pay to

the said company the fair value of its water pipes and other water appliances constructed in said street, lane, road or avenue, and such actual damages to the said company as shall be caused by the acquisition of said pipes and appliances by the Mayor and City Council of Baltimore ; and the amount so to be paid, if the said company and the said Mayor and City Council of Baltimore cannot agree in reference thereto, shall be ascertained by a majority of a board of three (3) arbitrators, one to be appointed by the Mayor and City Council of Baltimore, and one by said company ; and the two arbitrators thus appointed shall appoint the third arbitrator ; and if they cannot agree upon such third arbitrator, the latter shall be appointed by the Governor of the State. The provisions of this Act were subsequently embodied in the city charter, Act of 1898, ch. 123, sec. 6, with the following proviso : "Whenever the Mayor and City Council of Baltimore shall extend its water mains for the purpose of supplying water therein into the territory of Baltimore County previously occupied by some other water company then supplying water to residents of such locality, said Mayor and City Council of Baltimore, before it shall supply water to users in said territory, shall purchase or condemn the water pipes and rights of said local water company. To purchase all the property, rights, estates and privileges of any chartered company authorized to introduce, or which may hereafter be authorized to introduce, water into said city, upon such terms as may be agreed upon by the city, and such corporation or corporations, in the manner prescribed in their respective charters, or in the absence of such provisions, as shall be agreed upon by the said city and such corporation or corporations ; and such corporation is authorized to execute a conveyance to the city of all the franchises and property of said corporation ; and all such rights, privileges and franchises shall be vested in the Mayor and City Council of Baltimore, to be held, exercised and enjoyed by the said city as fully in every respect as might or could have been done by any such corporation or corporations under their respective charters.

It also appears that by the very language of the Act of 1898, ch. 123, sec. 2 (the new city charter) that this Act shall not affect or impair any right vested or acquired and existing at the time of the passage of the Act,   *   *   nor shall the Act impair, discharge or release any contract, obligation, &c., &c., whatever now existing.

And it is further provided by the third section of the same Act that all laws now in force relating or applicable to the Mayor and City Council of Baltimore or the city of Baltimore, and not included in this Act, and not inconsistent with said Act, and all ordinances of the Mayor and City Council of Baltimore now in force and not inconsistent with this Act, shall be and they are hereby continued until changed or repealed respectively, by the General Assembly of Maryland or the Mayor and City Council of Baltimore, provided, that all Acts or parts of Acts passed at the session of the General Assembly of Maryland in the year eighteen hundred and ninety-eight, relating to the Mayor and City Council of Baltimore or the city of Baltimore, or in any manner amending or adding to Article 4 of the Code of Public Local Laws, as said article existed before the passage of this Act, shall in no wise be affected by the passage of this Act, but all such laws shall have the same force and effect as if this Act had not been passed. The provisions of this Act shall not have the effect to enlarge or extend in any manner the rights or privileges of the Mayor and City Council or other authorities of the city of Baltimore outside of the limits and boundary of said city, beyond or in addition to those now limited to, and exercised by said city under the present laws.

In the case of *United Railways* v. *Hayes, &c.*, 92 Md. 490, we had occasion to construe the third section of the new city charter, where it was contended that the third section repealed by implication a certain ordinance of the city of Baltimore under which the railway claimed it was authorized to lay its track on Wilkins avenue from Brunswick street to the city limits. The ordinance was in force at the adoption of the city charter and we there held that as the right under the ordi-

nance to lay the track was a right existing when the new city charter was passed and adopted by the Legislature it continued in force and was not repealed. "This we think," said the Court, "is made manifest in view of the second section which provides that the charter shall not affect or impair any right, vested, acquired or existing" at the time of its adoption. "Reading sections two and three of the new charter together, we think that so far from there being a repeal of the ordinance in question by implication, it is quite obvious that no repeal was contemplated."

Applying the same construction given the statute. there under consideration to the case now before us, we think it is clear that there has been no repeal of the chartered rights granted the appellee by the Legislature of the State, and they exist as. they were originally granted. The city has the un-doubted right to purchase, or condemn the water rights of the appellee, in the annexed territory, as provided by the Acts, but it cannot destroy those rights, or deprive it of the rights granted by the Legislature of the State and reserved by the express provisions of the aforementioned Acts. We find therefore no error in the order of the Circuit Court of Baltimore City, passed on the 25th of January, 1902, and it will be affirmed.

*Order affirmed, with costs.*

(Decided June 18th, 1902.)