# BALTIMORE AND PHILADELPHIA STEAMBOAT COMPANY *v.* THE MINISTERS AND TRUSTEES OF THE STARR M. P. CHURCH.

*Lease of Wharf—Express Right to Erect Pier—Termination of Lease—Removal of Pier—Mandatory Injunction.*

A stipulation in a lease that the lessee shall have the first option of renewal for a further period of fifteen years upon such terms as may be agreed upon is unenforcible by reason of its indefiniteness.                               p. 170

Adjoining owners on Pratt and Light Streets in Baltimore City who, under authority conferred by various statutes, filled out into the basin and erected wharves, acquired rights as to the use of the waters of the basin, which are concurrent in the sense that they are to be exercised in conjunction, so that every proprietor shall enjoy as of right an unobstructed access by water to his wharf, yet none of the wharf proprietors shall have

the privilege of extending his wharf line by any method, so as to impair any other wharf proprietor's water use of his wharf.

p. 174

The right to a concurrent use of the waters in front of its wharf was a property right of the wharf proprietor which it might grant to another, but which could not continue to be enjoyed by that other after the expiration of the term of the grant or lease to it. p. 174

In a lease of wharf property, a grant of the right to extend the existing pier was a license coupled with the grant, which was irrevocable only so long as the leasehold estate continued. p. 175

That the lessor of a wharf acquiesced in the construction by the lessee of a pier in front of the wharf, as it was permitted to do by the terms of the lease, did not estop the lessor to deny the lessee's right to maintain the pier after the expiration of the lease, there being nothing to suggest to the lessor that the erection of the pier was not subject to the terms of the lease.

pp. 175, 176

A pier which is merely accessory to the operation of the builder's business, and which is built on property at once held by the builder in fee and as a tenant under distinct titles and for different terms, does not have such an inevitable and inherent quality of permanency that its mere building would be attributable to the assertion of any other legal right than the one acquired from the several stipulations of the leases under which the builder held possession. p. 177

A tenant should ordinarily surrender possession of the premises at the expiration of the term in the same and as good condition as when he received possession. p. 178

A person in possession as tenant should not, while enjoying the term, make or cause such physical changes in the property and its appurtenant rights as unreasonably to injure the reversionary estate, and if he so does he is chargeable with waste.

p. 178

A tenant under a lease is guilty of waste where, in apparent harmony with the privileges conferred by the lease, but subject to the limitations thereof, he makes an entire change in the nature of the premises by means of radical alterations therein and in contiguous premises of which he is the owner or lessee,

producing a result evidently not contemplated by the lessor at the time of leasing.                                         p. 178

While there is ordinarily no obligation upon one who, under authority of a license, makes changes in another's land or places structures thereon, to restore the land to its original condition on revocation of the license, there may be unusual circumstances imposing this obligation.                          p. 179

Where a lessee of wharf property, as allowed by the lease, erected in front of that property a pier, a portion of the pier also extending in front of other property, owned by or leased to such lessee, and on the expiration of the lease the lessee insisted on the maintenance of the pier, and denied the lessor's right to remove any portion of it, although, in order to restore to the lessor the full measure of its riparian rights, the removal of portions of the pier outside of, as well as within, the lines of the lessor's property and prolongations of such lines, was necessary, *held* that the lessor should not be required to assume the risk and burden of removal and restoration, and that a mandatory injunction should issue to compel this to be done by the lessee.                                         pp. 179, 180

A mandatory injunction is issued with extreme caution, and is restricted to cases where adequate redress at law is not afforded, or where the injury is not compensable in damages, and in weighing the propriety of its issuance the court will take into consideration the relative convenience and inconvenience which would result to the parties from granting or refusing this relief.                                         p. 180

But where, in addition to the inadequacy of the remedy at law for damages for the ends of justice, the injury is of so serious or material a character that the restoring of things to their former condition is the only remedy which will meet the requirements of the case, a mandatory injunction will be awarded.                                         p. 180

*Decided June 30th, 1925.*

Appeal from the Circuit Court of Baltimore City (STEIN, J.).

Bill by the Ministers and Trustees of the Starr Methodist Protestant Church in Baltimore City against the Baltimore and Philadelphia Steamboat Company. From a decree for plaintiff, defendant appeals. Decree affirmed.

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Parke, and Walsh, JJ.

*Thomas F. Cadwalader* and *William L. Rawls,* for the appellant.

*Charles F. Harley* and *John C. Tolson,* with whom were *Joseph C. France, Harry E. Gilbert,* and *Tolson & Tolson* on the brief, for the appellee.

Parke, J., delivered the opinion of the Court.

The Baltimore and Philadelphia Steamboat Company, appellant, has been the owner and lessee of wharf property on the Patapsco River, in the right angle formed by the southern extremity of Pratt Street with the eastern boundary of Light Street, for a great number of years. The wharf running along the south side of Pratt Street and the wharf running along the east side of Light Street were in the navigable waters of the Basin, which formerly covered the beds of the two streets and all the land here in controversy, which the respective parties on this appeal derived from a common grantor. The original shore line had been filled out from the north and west by the riparian proprietors under the provisions of Acts 1745, ch. 9; 1796, ch. 45; 1801, ch. 92; 1805, ch. 94, or some of them; and by the decisions of this Court in *Page v. Baltimore,* 34 Md. 558; *Hazlehurst v. Baltimore,* 37 Md. 199, and *Horner v. Pleasants,* 66 Md. 475, it was held "that although the owners who had so filled out their lands did not thereby acquire a technical fee in it, they did acquire a perpetual use of it for the purpose of erecting and maintaining the wharves, which is defined in *Horner's* case as a license or franchise, which, so long as it is used, the State can no more annul than she could a patent in fee." *Baltimore City v. Baltimore & Phila. Steamboat Co.,* 104 Md. 492.

At the time of the great fire of 1904 in Baltimore, the city owned the wharf and riparian rights of the former owners of the land bounded by the north shore of the Basin; and this wharf was leased by the Baltimore and Philadel-

phia Steamboat Company, the present appellant, which was, also, the lessee from the present appellant of a wharf lot on Light Street. This lot was the third in succession of six contiguous wharf lots, which were on the east side of Light Street and immediately south of Pratt Street. The other five wharf lots were owned in fee by the appellant, and the six had a frontage on Light Street of about one hundred and fifty-one feet. The wharf on every one of these six lots was as wide as the lot, and had a depth of fourteen feet, so that the wharves which the appellant then owned and leased on Light Street were of the uniform width of fourteen feet, with a frontage of one hundred and fifty-one feet on Light Street and also on the navigable tidewater front. On the water front of these wharves there had been built out over the water, with the permission of the city, a continuous pier, "projecting from the east side of Light Street into the Basin eleven and a half feet at its northern end, and one hundred and seven feet ten inches at its southern end, and having a diagonal water front on its east side of one hundred and eighty-four feet, five inches." *Baltimore City v. Baltimore & Phila. Steamboat Co.,* 104 Md. 488.

After the fire of 1904, Baltimore City decided to widen Pratt Street eastwardly from its intersection with Light Street by adding on its south side a strip of land fifty feet wide by three hundred and fifty-eight feet long. In order to do this, the wharf of the steamboat company at the end of Pratt Street and a part of the northern half of the Light Street wharf had to be condemned; and the proceedings ultimately came to this Court for review in the cross appeals of the appellant and Baltimore City, which are reported in 104 Md. 485.

Baltimore City obtained the desired property, and the Court said, in the appeal mentioned, that the city would have the same wharfage and riparian rights to the navigable water in front of the south side of the widened Pratt Street, which she has to that in front of the same side of the street in its present location. Page 503. The city, therefore, is the own-

er of the wharf and riparian rights incident and appurtenant to the ownership of the water front on the border of Pratt Street.

The effect of the condemnation on the Light Street wharf was to leave the appellant the owner of a lot on either side of the appellee's wharf lot, which was then under lease to appellant. The lot of appellant to the north of appellee's leased lot was nineteen feet and nine inches wide while that to the south was fifty feet in width. In other words, the appellant then held as owner and lessee a wharf on Light Street about one hundred and one feet in length, with a uniform wharf depth of fourteen feet.

The water line of the Pratt Street wharf formed a right angle with the water line of the Light Street wharf, and these two wharves had been brought out to navigable water by the respective riparian owners, so that the body of water within this right angle and in front of each wharf was deep, navigable water. It has been decided that the right of these riparian owners to use the portion of such waters lying in front of their wharves must be exercised and enjoyed with due regard to the rights of others, similarly situated, to use these same waters. Through Judge Schmucker the Court, in *Baltimore City v. Baltimore & Phila. Steamboat Co., supra,* defined these rights in this paragraph: "The rational and just construction of all the Acts of Assembly to which we have referred considered as a body of enactments relating to the rights of the owners of lands bounding on the Basin requires us to hold that the Legislature by their passage intended to and did grant to the owners of the wharves on Light and Pratt Streets concurrent rights to the use of the navigable waters of the Basin lying in front of those wharves." Page 498.

At the time of the fire and these condemnation proceedings, and this quoted opinion, the lot now in controversy was under a five year lease, which expired on January 1st, 1908. The wharf on Light Street was extended eastwardly by a pier whose southern base projected, at right angles with the

water front of the wharf, a distance of one hundred and seven feet and ten inches over the water, and whose northern line ran out about thirty-two feet, and the water line of the pier, between these two extremities, was about one hundred and thirty-two feet. The dimensions of the wharf lot, which the appellee in the instant case had then demised to the appellant, were a frontage of its wharf on both Light Street and the navigable water of thirty-one feet, one inch, with a uniform depth of fourteen feet. The northern and southern boundary lines were perpendicular to the east line of Light Street and parallel to the south line of Pratt Street, which was nineteen feet and nine inches distant from the northern boundary line of appellee's wharf. If the northern and southern lines of appellee's lot were extended to the east to open water, the section of the pier directly in front of the lot would have a northern boundary line of forty-seven feet, and a southern boundary line of sixty-eight feet, and a water boundary line of thirty-six feet and nine inches.

Except as affected by the appropriation by the city under the said condemnation proceedings, the wharves, with the pier, remained in the possession of the appellant, either as owner or lessee, and it used them as a unit. Its five years' lease on appellee's wharf lot expired on January 1st, 1908, but on December 13th, 1907, the appellant obtained a new lease for appellee's wharf property, "with all rights and privileges incident thereto, and the right of extending such pier or piers therefrom as it may build under any permit, ordinance, or grant from the Mayor and City Council of Baltimore," for the term of fifteen years, beginning with the first day of January, 1908, and ending upon the thirty-first day of December, 1922. The annual rental under the new lease was increased by $700.

On May 7th, 1908, the municipality passed an ordinance granting to appellant the privilege and authority to use, for a period of fifty years, all wharfage rights and appurtenances along the south side of Pratt Street, from its intersection with the east side of Light Street wharf and extending thereon westwardly a distance of four hundred and fifty

feet, and a franchise to build, at its own expense, in the water along the south side of Pratt Street for four hundred and forty feet and along the east side of Light Street for a distance southerly that shall not exceed one hundred and one feet and six and one-quarter inches from the south side of Pratt Street, "for which wharfage rights are owned or leased by it or them, such pier or piers, with or without covered superstructures thereon as may be necessary for the conduct of the business of the said Baltimore and Philadelphia Steamboat Company, its successors or assigns, and the use and enjoyment of its wharfage rights and the wharfage rights hereby granted."

The ordinance carried the usual safe-guarding provisions, and an agreement on the part of the appellant yearly to pay to the city not less than ten thousand dollars, and to remove all piers or improvements erected under the franchise granted, upon its expiration. This ordinance was, however, subject to the rights of the appellee to use the navigable waters of the harbor lying in front of its wharf concurrently with the other owners of the wharves on Light and Pratt Streets. *Supra.* As the appellant had acquired by its new lease these riparian rights of the appellee as the owner of its wharf lot, the appellant was in possession as owner, as lessee of the city for fifty years, and as lessee of the appellee for fifteen years, of the riparian rights of all the wharf owners on the right angle formed by the navigable water front lines of Light and Pratt Streets. Although the lease with the appellee contained a stipulation "that at or after the end of the said term, the said lessee shall have the first option for a period of ninety days of renewing this lease for a further period of fifteen years upon terms as to rental to be then agreed upon by and between the parties," the appellant could not enforce the renewal as the agreement was too indefinite. *Gelston v. Sigmund,* 27 Md. 334; 2 *Tiffany, Landlord & Tenant,* sec. 220, p. 1521. However, it then had united the ownership of all the riparian rights, with the privilege of extending the pier, for not less than fifteen years, and there

could be no possible objection to the full utilization of its contractual rights during this period.

The appellant accordingly built a pier under the ordinance passed on May 7th, 1908. The wharves on Light Street, fourteen feet wide, may be considered as not forming a part of the pier, and, exclusive of these wharves, the pier extends southward from Pratt Street, and four hundred and forty-one feet measured eastwardly from a point fourteen feet from the intersection of Pratt and Light Streets. The pier is divisible into two geometrical figures. The first is the parallelogram, one hundred and one feet along the wharves, by fifty-six feet along Pratt Street and the Williams wharf to the south of appellant's lot; and the second is a trapezoid whose parallel sides extend at right angles with Pratt Street to the water and are three hundred and eighty feet apart, measured along the southern boundary of Pratt Street, the northern line of the trapezoid, and about three hundred and ninety-four feet apart, measured along the water edge of the pier, which is the southern line. The western parallel side, or the one nearest Light Street, is one hundred and one feet in length, and the eastern parallel side is twenty-one feet long. The superficial area of the pier is said to be 30,915 square feet. On this pier the appellant has built its scales and offices, "cigarette" and store houses.

The completion of this pier barred all approach by water to the wharf property of the appellee, and access to it was over this new pier, which, with the wharves on Light Street, was operated as one property by the appellant and was known as Pier 1, Light Street.

The lease had been made for fifteen years, which was the longest period, at the time of its execution, for which a lease could be made without being subject to purchase during the term by the lessee at the capitalization of the rent reserved; and it contemplated a renewal for a like term, as we have before set forth. The appellant and appellee differed, however, on the amount of rent, and they could not agree, so the lease was not renewed on any terms. Since the expiration

on December 31st, 1922, the parties have been without lease or agreement and the appellee has protested against any use of its property by the appellant, and has secured an ordinance, approved on April 10th, 1924, authorizing it to erect a pier in the water from its wharf, and to have access by water craft, subject, however, to any rights of the appellant under its ordinance of May 7th, 1908.

Since the termination of the lease, the appellant has not used in any way the wharf property on Light Street. The appellant, first, chalked off its boundaries, thirty-one feet, one inch, on Light Street and fourteen feet deep, and later put a temporary fence around it so as to prevent its employees from going upon it, but it has declined to remove any of its pier so as to give to the appellee the same riparian use it enjoyed at the time of the execution of the lease of December 13th, 1907. The nearest point of appellee's wharf property to open water is a distance of one hundred and twenty feet over the pier constructed by the appellant. In order to make the situation clearer, a rough sketch has been made so as to show the relative location of the objects referred to in the opinion.

130 A.—4

As the parties differed about their respective riparian rights, the appellee filed a bill of complaint, on June 15th, 1924, for the principal purpose of having the court compel the appellant to remove all the obstructions which it had placed or caused to be placed in front of the wharf property of the appellee, and to enjoin it from interfering with the free and unobstructed use in common of all the riparian rights of the appellee. The lower court, after answer, testimony, and a hearing, decreed that the appellant should forthwith remove all obstructions which it had placed in front of the appellee's wharf property so far as the same interfere with the access of the appellee to the water of the harbor. The appeal is from this decree.

The appellant conceded to the appellee an interest in the use of the pier " as a joint facility erected by agreement in order to make available for wharfage purposes the several properties or franchises of both parties in proportion to their respective interests," and contend that it cannot be required to remove any part of the pier because (1) the pier is in aid and furtherance of the appellee's franchise and not in derogation thereof; and (2) the appellee is estopped, under all the circumstances surrounding the erection of the pier in question, from claiming that it obstructs the use of the appellee's riparian rights with respect to its wharf lot on Light Street, and, lastly, (3) there is no express covenant in the lease that the appellant would remove any authorized structures erected during the term.

1. The franchise or perpetual use by the appellee of its lot was for the purpose of erecting and maintaining its wharf thereon and of using the navigable waters of the Basin in front of its wharf concurrently with the similar rights of the other owners of wharves on Light and Pratt Streets. These wharves were in navigable water, in which every one has an equal right to the reasonable use of the water for all lawful purposes of travel and transportation. But, as every water craft occupies exclusively the surface of the water it displaces, no two can possibly occupy the same water space

simultaneously, and so the rights of no one water craft in navigable water is absolute, but each must in turn and in due course give place to others. When the court spoke of "concurrent rights to the use of the navigable waters of the Basin lying in front of those wharves," it necessarily had in mind the actual situation with respect to the navigable waters of the Basin, which was a public way, and to the Light and Pratt Street wharves, which were private property. As these wharves had been built, by the inducement of the State and under similar conditions, it was but a natural and necessary consequence that every proprietor of a wharf property, thus similarly situated on Pratt and Light Streets, should have equal riparian advantages with every other like proprietor. Their rights were, therefore, "concurrent" in the sense that they were to be exercised in conjunction, so that while, on the one hand, every wharf proprietor should continue to enjoy as of right an unobstructed access by water to his wharf yet, on the other hand, none of the wharf proprietors should have the privilege to extend his wharf line by any method so as to impair any other wharf proprietor's water use of his wharf. *Baltimore City v. Baltimore & Phila. Steamboat Co.,* 104 Md. 498; *Tiffany on Real Property,* sec. 305. In this general subordination for the common benefit to the exigencies of a common situation, every wharf proprietor was assured of his own particular riparian rights by a corresponding limitation imposed upon all of the other wharf proprietors whose properties were situated on this water front angle formed by Light and Pratt Streets. But this right to a concurrent use of the waters in front of its wharf was a franchise or right whose method and manner of enjoyment was a property right of the appellee, which might be granted to another, but which could not continue to be enjoyed by that other after the expiration of the term of the grant. The interests and privileges of the appellant in the wharf property of the appellee were acquired, defined and limited by the terms of a contract for a definite term. As the appellant's estate and rights in the wharf property

were created by contract, so they expired with its termination. The law cannot abridge the owner's control of his property rights because it is unwise, and transfer ownership in severalty in A. to ownership in common of A. with B. Nor will it compel the owner of a franchise or use to maintain unwillingly a status with respect to its enjoyment that was created by, and for the benefit of, a grantee pursuant to his contract for a definite period which has expired. 2 *Tiffany on Real Property,* secs. 349 (b), 350.

2. The lease of the wharf property and the license of the appellant to extend the then existing pier were expressly limited to the period of fifteen years by this explicit provision of the lease: "To have and to hold the above described premises with all rights and privileges incident thereto, and the right of extending such pier or piers therefrom as it may build under any permit, ordinance or grant from the Mayor and City Council of Baltimore, unto the said lessee, its successors and assigns, for the full term of fifteen years as aforesaid."

The right thus bestowed upon the appellant of extending the pier was a license coupled with the grant creating an interest or leasehold estate in the wharf property for a definite period of fifteen years, and this license was irrevocable so long only as this term continued. 18 *Am. & Eng. Ency. of Law* (2nd ed.), 1147; *Wood v. Manly,* 11 Ad. & El. 34; *Wood v. Leadbetter,* 13 M. & W. 838; see *Goddard on Law of Easements* (8th ed.), 509; *Lord Dynevor v. Tennant,* 32 Ch. Div. 375.

The appellant and the appellee were of unimpeachable capacity and they dealt at arms length, with a complete grasp of their respective rights, with full knowledge of the subject matter of their negotiations, and with a thorough comprehension of the terms, nature and duration of their contract, which fixed and defined their respective rights and obligations. There is no question of estoppel when the title and rights of all parties and all the facts were equally known or ascertainable from the same obvious and available sources.

*Baltimore City v. Baltimore & Phila. Steamboat Company,*
104 Md. 503; *Park Assn. v. Shartzer,* 83 Md. 13, 14.

As the license to extend the pier was a privilege to be ex-
ercised and enjoyed within a prescribed length of time, the
right of the appellant to its use was temporary and not per-
manent. The lease so informed the appellant, and when it
extended the pier its act was not induced by the appellee but
was wholly voluntary, and in the exercise of an unquestion-
able contractual right, which the appellee could not deny,
but which both it and the appellant knew was temporary and
could not endure beyond the term of the lease.

It was under these circumstances that the pier was built
in its present form, and, if it be conceded that the appellee
had the fullest knowledge, with entire but mere acquiescence,
this knowledge and acquiescence cannot bind the appellee,
which had no means of resistance during the fifteen years of
its lease to the appellant. The pier was built as a unit over
all the property owned or leased by the appellant, on its own
initiative, choice, and responsibility, and that portion of it
extending from the wharf property of the appellee is an
integral and indispensable part of the whole, which the ap-
pellee had the right to assume was erected with reference to
the fifteen years period of its lease, and subject to its terms.
The appellee was not put on notice, and was not bound to
assume, that the erection of the pier was in derogation of its
property rights and franchises. Nothing occurred and there
was nothing inherent in the situation to suggest to the ap-
pellee that the appellant was building the pier under the
mistaken belief that the appellant would have the legal right
to maintain and use the pier as a permanent structure. In
fact, the nature of the appellant's rights to the several por-
tions of fast land and water covered by the pier is an irrefut-
able answer to the contention that the status of the pier is
permanent. The pier covers the comparatively small area of
freehold estate owned by the appellant, and the much greater
area, embraced in the leasehold interest of fifteen years that
was obtained from the appellee and in the leasehold interest

of fifty years that was obtained from the city, subject to the stipulation in the lease from the city that, whenever such lease should end, the appellant should remove any pier or improvement erected under the franchise granted by the city within the entire area of the parallelogram of four hundred and forty feet by one hundred and one feet and six and a quarter inches and embracing all the property rights in question of the appellant and appellee and the city. This franchise to build piers or improvements was, of course, subject to the property rights of the appellee. *Supra.*

A pier, which is merely accessory to the operation of the builder's business and which is built on property at once held by the builder in fee and as a tenant under distinct titles and for different terms, does not have such an inevitable and inherent quality of permanency that its mere building would be attributable to the assertion of any other legal right than the one acquired from the several stipulations of the leases under which the builder held possession. A pier so located and used contained the elements of its own natural disintegration, and, beyond the period of fifteen years, offered no indicia of continuity.

A party cannot speculate on the willingness and reasonableness of his landlord to renew a lease, and then, when disappointed, justify a refusal to restore the property demised at the expiration of the term on the ground that his enjoyment of his granted rights under the lease had made him a tenant in common by estoppel with his landlord in the use of the landlord's several property rights. The facts on this record do not justify the application of the doctrine of estoppel under its controlling principles.

3. The record does not show that the plan, construction, or maintenance of the pier in question was influenced by the conduct of the appellee, which, in the absence of satisfactory evidence to the contrary, had the right to assume, and remain passive on the assumption, that the building of the pier was not in conflict with its property rights and uses as a reversioner upon the termination of its lease to the appel-

lant. When, therefore, the lease was at an end, and the negotiations for its renewal failed, the appellee was within its rights in demanding a surrender of the premises. The appellant put a chalk mark, and then a temporary fence, around the thirty-one by fourteen feet wharf of the appellee, so as to set apart this small portion of the pier, but declined to give the appellee exclusive possession of any other portion of the pier, or to remove any portion of the floor surface so as to afford the appellee any access by water to its wharf on Light Street. The effect upon the property rights of the appellee was immediate and disastrous, because it prevented any enjoyment of its wharf property, except such common use as the appellant was willing to yield over the pier to the water front. Its property rights in severalty were destroyed by the possession of the appellant, and the wharf, with its riparian privileges, deprived of any independent substantial value. It was a serious and a grievous situation, whereby the wharf property and its uses as they existed at the beginning of the term were fundamentally altered.

It is the expectation of the law that a tenant shall ordinarily surrender possession of the premises at the expiration of his term in the same and as good condition as when he received possession. The landlord is entitled at the end of the term to the identical premises which he has leased. And it is a general rule that a person in possession as tenant should not, while enjoying his term, make or cause such physical changes in the property and its appurtenant rights as unreasonably to injure the reversionary estate. If he does, he is charged with waste. 1 *Tiffany on Real Property,* secs. 279, 280, 281, 284; *Washburn on Real Property* (6th ed.), secs. 285,287. A *fortiori* is he guilty of waste where, in apparent harmony with the privileges conferred, but subject to the limitations of the lease, he has made an entire change in the nature of the premises leased by means of radical alterations in it and in the contiguous premises of which he is the owner or lessee, and produced a result which was evidently not contemplated by the appellee at the time

of leasing. *Gale v. McCullough,* 118 Md. 287, 292; 1 *Tiffany on Real Property,* sec. 284, p. 965.

There was no unwarranted delay by the appellee. It was not until the termination of the lease that the appellant set up the right to keep the pier intact, and it was not until then that the continuance of that part of the pier in front of appellee's wharf and interference with its original use became unlawful and a waste. For the reason that the original construction of the pier in front of the appellee's wharf was permissive for the period of the lease, the cost of the removal would, if there were not unusual circumstances, be borne by the appellant, as the general rule is well stated by the learned author of *Tiffany on Real Property* to be that, "there is no obligation upon the licensee, on revocation of the license, to restore the land to the condition in which it was before he made changes therein or placed structures thereon, under authority of the license." *Supra,* sec. 349 (g); *Hodgkins v. Farrington,* 150 Mass. 19. However, the circumstances were unusual. The pier as built involves three distinct properties and their use. The restoration of the premises of the appellee will not be accomplished by the removal of that portion of the pier lying in front, and within the prolongation of the side lines, of the appellee's wharf. Other portions of the pier, not within the compass of any property lines or rights of the appellee, must be taken away to restore to the appellee the full measure of its riparian rights. And this restoration must necessarily be made in a manner which, while securing to the appellee its riparian rights, will yet be best adapted, under all the conditions, to the enjoyment by the appellant of its remaining properties and their legitimate use. Furthermore, the appellant has insisted upon the maintenance of the pier, and has denied the right of the appellee to remove any portion of it, and has, meanwhile, enjoyed all the benefit and advantages of its use as fully as if the appellee's rights did not subsist. Under these circumstances, the appellee should not be required to assume the risk and burden of removal and restora-

tion. 18 *Am. & Ency. of Law* (2nd ed.), 1149, 1150; *Stevens v. Stevens,* 11 Met. (Mass.), 251; *Shipley v. Fink,* 102; Md. 229.

Under the facts of this record, the appellee as the owner of a wharf property on navigable water was entitled to all its appurtenant riparian rights, and to an injunction against a former lessee, who insisted on using, or obstructing the owner's enjoyment of, the wharf property against its will;. and it was no defense that the appellant was willing to pay a reasonable sum for its use, which was beneficial and, per-- haps, necessary for the lessee's continuance of its business. And further, a mandatory injunction will lie to compel the appellant to restore the former condition of the obstructed. riparian rights. *Weems Steamboat Company v. People's: Steamboat Company,* 214 U. S. 349, and as annotated in 16, *Ann. Cas.* 1222; *Hodgkins v. Farrington,* 150 Mass. 19; 2. *Wood on Nuisances* (3rd ed.), sec. 662; *Susquehanna Co. v.. St. Clair,* 113 Md. 672; *Shipley v. Fink,* 102 Md. 219; 1 *Tiffany on Real Property,* sec. 290 (b), p. 984; 1 *High on Injunctions* (4th ed.), secs. 436, 691, 1138; *Kerr on Injunctions* (5th ed.), pp. 44-45; 78-79; 106-110; 2 *Underhill on Landlord and Tenant,* sec. 445, n. 60, p. 725.

4. A mandatory injunction is issued with extreme caution, and is restricted to cases where adequate redress at law is not afforded or where the injury is not compensable in damages, and in weighing the propriety of its issuance the court will take into consideration the relative convenience and inconvenience which would result to the parties from granting or refusing this relief. *Texas Co. v. U. S. Asphalt Co.,* 140 Md. 350; *Linthicum v. Wash., B. & A. Elec. R. Co.,.* 124 Md. 263; *McDowell v. Biddison,* 120 Md. 118; *Smith v. Myers,* 130 Md. 64. But where, in addition to the inadequacy of the remedy at law for damages for the ends of justice, the injury is of so serious or material a character that the restoring of things to their former condition is the only remedy which will meet the requirements of the case;. a: mandatory injunction will be awarded. *Supra..*

In this case the continuance of the pier not only obstruct-
ed but destroyed the former water way or approach to the
wharf. If it be permitted to remain, the pier will work a
destruction of the wharf and its riparian use, which the
owner holds and is entitled to enjoy; and the wrongdoer
will acquire, in effect, without purchase, lease or contract,
riparian rights, which alone gave substantial value to the
wharf property of the appellee, but which the appellant was
unable either to lease or buy. The decisions cited by appel-
lant are not applicable to the instant case, whose facts com-
pel the conclusion that a mandatory injunction is the only
remedy that will meet the requirements of justice. *Supra;*
and *Kerr on Injunctions* (5th ed.) 44, 45; *Knotts v. Sum-
mit Park Co.,* 146 Md. 237; *Duvall v. Ridout,* 124 Md. 199;
*Original Hartlepool Collieries Company v. Gibb,* L. R. 5
Ch. Div. 713, 720, 726.

In the last cited case, which is analogous, riparian owners
maintained a wharf, and the owner of an adjoining wharf
had moored or attached by iron chains to the extremity of
his wharf, next to that of the first owners, large wooden ob-
structions, which floated on the river when the tide was up,
and projected for some distance into the Thames, and pre-
vented the first owners from bringing water craft alongside
their wharf, and there unloading, and the court held that
the riparian owner has a right to moor a vessel of ordinary
size alongside his wharf for the purpose of loading or un-
loading, at reasonable times and for a reasonable time; and
that the court will restrain by injunction the owner of ad-
joining premises from interfering with the access of such
vessel by allowing the obstruction to remain, even though
the vessel may overlap his own premises. pp. 720, 724;
*Lyon v. Fishmonger's Company,* L. R. 1 App. Cas. 662.

The case is not free of difficulty, and is quite unusual in
its circumstances, but our conclusion is that the learned
chancellor was right in holding that a mandatory injunction
should issue. As there seems to be doubt as to the mean-
ing of the decree and as the cause will have to be remanded

for further proceedings, it might be well to modify the decree by perpetually restraining the appellant, its agents or servants, from erecting or constructing, or causing or allowing to remain in the waters of the harbor of Baltimore City, in the angle formed by the southern line of Pratt Street with the eastern line of Light Street, any piles, piers, wharves, or other structures or buildings so as to obstruct, prevent or interfere with the use and enjoyment of the appellee's wharf property as the said wharf property and its riparian rights and privileges were enjoyed and used at the time of the execution of the lease of the appellee to the appellant, dated December 13th, 1907, and that any existing piles, piers, wharves or other structures or buildings so obstructing, preventing, or interfering with such use and enjoyment of the appellee's wharf property be forthwith removed by the said appellant. *Seton on Decrees,* title "Water Rights," secs. 4, 5.

> *Decree affirmed, with leave to modify in conformity with this opinion, and cause remanded for such further proceedings as may be necessary.*