## WEBB, ADMINISTRATOR OF THE ESTATE OF RIGGS T. WEBB, SR., et al. v. ARRINGTON, et al.

[No. 102, September Term, 1967.]

*Decided February 15, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*Reginald D. Malloy* for appellants.

*Charles E. Wehland* for appellees.

FINAN, J., delivered the opinion of the Court.

This appeal involves a distinction as old as the annals of husbandry, the difference between "fructus naturales" and "fructus industriales," the dispute involving sod.

In March of 1963, Harry Webb died intestate and his 140 acre farm passed to his children and his widow as survivors. The widow deeded her interest to the children, Riggs T. Webb (appellants' testator) and Mrs. Margaret W. Arrington (an appellee), so that each child thereafter held an undivided one-half interest in the farm as tenant in common.

Mr. Webb had maintained the farm for his father since 1947, and desired to remain on the land. His wife, therefore, approached Mrs. Arrington with the offer of $75 per month for occupancy of her interest in the land, said sum being one half of the fair rental value of the farm. Mrs. Arrington accepted the offer and received the rental each month for four months. Payments ceased in July.

Shortly thereafter, Webb terminated the operation of the farm as a cattle and dairy farm and commenced to sell part of the land as sod. The record indicates that from December of 1963 until Webb terminated his possession on March 11, 1966, he sold approximately 55 acres of sod, at $250 per acre, realizing $13,750. It should be noted that part of the sod was sold after this suit was filed.

Appellees, Margaret W. Arrington and husband, filed the bill of complaint on July 15, 1964, which generally related the above facts and prayed for a sale of the farm and an accounting as to proceeds from the sale of approximately forty acres of sod and several crops of hay harvested by Webb. The sale was decreed on October 14, 1964 by Judge Macgill and was finally ratified on January 11, 1966. Webb died on May 14, 1966 and his son, Riggs T. Webb, Jr., Administrator of his father's estate, was substituted as a party. Testimony was taken before Judge Mayfield on the issue of an accounting on September 16, 1966, and it is from his order granting an accounting that the case comes before this Court.

The thrust of the legal arguments presented before Judge Mayfield involved the "fructus naturales"-"fructus industriales" distinction in real property law. Basically, appellants contended that the work of seeding, liming and fertilizing the soil, mowing the grass and rolling the soil were acts of manual labor necessary to turn pasture land into marketable sod, and that a tenant need not account to his landlord for proceeds from the

sale of the fruits of his labor. Mrs. Webb also testified that her husband expended about $5,500 in labor and materials to produce the sod; however, the estate was unable to produce any bills at the hearing which would substantiate this claim. Appellees argued that the grass which was cut as sod actually formed part of the original pasture land of the farm at the time the parties became tenants in common and therefore the appellants removed part of the land, rather than annual crops which were products of their labors.

The lower court found as matters of fact that the land from which the sod was cut existed formerly as cattle pasture land which Webb disposed of because his failing health rendered him unable to continue the dairy farm. In addition, by paying monthly rental to Mrs. Arrington, he became tenant of her undivided half interest in the farm. The court also concluded that the removal of sod impaired the market value of the farm.

The sod which was sold constituted the *original* grass and turf which existed as pasture land when the parties took title. The evidence of expenditure for fertilizer, which lacked documentary support, was found by the lower court to be at least partially allocable to the pasture land, before the Webbs even considered the idea of selling sod commercially.

The lower court was also persuaded by the testimony of witnesses, including that of appellants' witness Stanfield, Extension Agent for Howard County, that although as an agricultural expert he considered sod to be a growing crop, as between landlord and tenant, sod or pasture land growing at the inception of a lease would normally be considered part of the realty; and furthermore, that in the absence of an agreement the tenant could not cut the sod without the landlord's consent.

Although appellants argue that the lower court was clearly in error when it concluded that the value of the property had decreased due to the sale of the sod, the testimony of witnesses supported such a finding. Mr. Iager, an expert witness on appraisement of real estate, testified that the removal of the sod had decreased the value of the farm to the extent of $6,250.

This Court is of the opinion that this case was properly resolved by the lower court. There is an abundance of authority for the general rule that a tenant is entitled to products which

are classified as "fructus industriales," but not entitled to products classified as "fructus naturales." In the case of *Key v. Loder,* 182 A. 2d 60, 61 (D. C. 1962), the Court said:

"Vegetation is normally classified as either *fructus naturales* or *fructus industriales. Fructus naturales* include any plant which has perennial roots, such as trees, shrubs and grasses. *Fructus industriales* includes those plants which are sown annually and grow primarily by manual labor, such as wheat, corn and vegetables."

See *Wilson v. Fowler,* 88 Md. 601, 609, 42 A. 201, 204 (1898) ; *Purner v. Piercy,* 40 Md. 212, 223 (1874) ; *Coombs v. Jordon,* 3 Bland 284, 312 (1831) ; 21 Am. Jur. 2d. *Crops,* §§ 2, 3 (1965) ; 2 Tiffany, *Real Property* § 600 (1939).

Under the facts presented in the case at bar, we do not believe the sod which was cut and sold to be a growing crop. We are of the opinion that the sod qualified as "fructus naturales." The sod was part of the original pasture; there was no agreement between landlord and tenant as to cutting sod; there was no evidence of any intent by the landlord and tenant to treat the sod as a crop or past usage of sod for this purpose. As "fructus naturales" the sod was a part of the realty to which the tenant was not entitled.

It is not our intention that this opinion be interpreted as holding that sod, as such, can never be considered a crop. Developments of modern science in agronomy and agrostology, under a given set of facts, might well justify the classification of sod as a "fructus industriales." Such a case has not as yet been presented to this Court, nor is it presented in this instance. The matter is well stated in 21 Am. Jur. 2d. *Crops,* § 3 :

"One very important question which recurs in many phases of the law of crops involves the nature of crops as realty or personalty. The answer to that question depends upon the circumstances of the particular case, including the character of the crops and whether or not they have been severed from the land, the relation and intention of the parties, and the nature of the trans-

action in which the question arises, many courts considering them realty in some transactions and personalty in others."

The appellee Mrs. Arrington appears in this case in the dual role of landlord as to an undivided one-half interest in the farm and tenant in common, possessing an undivided one-half interest in the reversionary estate. At common law the redress of the landlord against the tenant who had committed acts of waste on the property was by "trespass on the case" in an action at law. *White v. Wagner*, 4 H. & J. 373 (1815). The lower court in its opinion placed emphasis on the landlord-tenant relationship and the well settled law that a tenant in possession may not cause such a physical change in the property as to decrease the value of the landlord's reversionary interest. See *Steamboat Co. v. Starr M. P. Church*, 149 Md. 163, 130 A. 46 (1925). See also 2 Tiffany, *Real Property* § 633 (1939) :

"A particular tenant, such as a tenant for life or years, has, in the absence of a stipulation or license allowing him so to do, no right to take clay, gravel, soil, and the like, unless such material was one of the recognized profits of the land before the commencement of his tenancy, * * *."

Although the suit in the instant case was for an accounting in equity, and the Chancellor based his decision on the landlord-tenant relationship, appellants did not raise an objection to this either in the lower court or on appeal. Nevertheless, we are of the opinion that the decision of the Chancellor might be more accurately rationalized on the principles of cotenancy, and the remedy of an accounting. In *Paradise Amusement Co. v. Hollyday*, 190 Md. 48, 51, 57 A. 2d 308, 309 (1948), Judge Markell, speaking for the Court, said :

"Equity has jurisdiction over accounting between tenants in common, including accounting for rents and profits collected by one co-owner from a tenant or realized from exclusive use and occupation of common property by the co-owner."

At common law a tenant in common who occupied all of the

property was not liable to his cotenant for rent for his use and occupancy of the land, unless he had ousted the cotenant. Nor was the tenant in possession accountable to his cotenant for the latter's share of rents and profits. The English statute of IV Anne, ch. 16, § 27, authorized a tenant in common to bring an action of account against his cotenant "for receiving more than comes to his just Share or Proportion, and against the Executor and Administrator of such Joint-Tenant or Tenant in Common; * * *." This statute is part of the law of Maryland. See Md. Const., Decl. of Rights, Art. 5 (1867); 2 Alexander's British Statutes 899 (1912).

Professor Tiffany appears to interpret the statute as giving only a right of action for rents and profits actually received by a cotenant from a third person, and not for the profits realized from products raised on the land by the cotenant in possession, stating:

> "It would be unjust if the cotenant in possession, who has a right to the use of the land, and who perhaps makes it productive by his labors should be compelled to divide his profits with another who does not choose also to exercise his right of occupancy." Tiffany, *Real Property* § 301 (Abridged Ed. 1940).

In support of this proposition, Tiffany cited *Israel v. Israel*, 30 Md. 120 (1869). However, *Israel* merely restates the accepted rule that one cotenant who chooses not to live on the property may not charge the cotenant in possession a rental for use and occupancy of half of the property. See also *McLaughlin v. McLaughlin*, 80 Md. 115, 30 A. 607 (1894). Perhaps the proceeds from the crops grown by a cotenant exclusively in possession, without ouster of his cotenant, comes within the purview of his use and occupancy. We do not need to reach that question in this case. We believe Professor Tiffany's interpretation to be compatible with the relief granted by the lower court. We are not here talking about the profits realized by a cotenant from crops grown by his industry but profits realized from his sale of that which was part of the realty, the original pasture land. Certainly such a situation, in contemplation of the statute of IV Anne, calls for an accounting by the

cotenant who has thus profited at the expense of the other co-tenant.

As a tenant Webb was not entitled to remove the sod from the farm, and as a tenant in common of an undivided one-half interest in the farm he could not profit from a sale of that part of the realty which affected the value of the interest of the other cotenant, without rendering an accounting.

We approve the action of the lower court in holding that Webb was obliged to account to the appellees in the amount of $6,875, representing one-half of the proceeds realized from the sale of the sod, plus rent at the rate of $75 per month, as agreed between the parties, from March 23, 1963 to March 11, 1966, less credit for the four months rent actually paid. Accordingly, the order of the lower court directing the cause to be referred to the court auditor for a statement and account following the guidelines herein set forth, is affirmed.

*Order affirmed, appellants to pay costs.*