## STATE DEPARTMENT OF HEALTH AND MENTAL HYGIENE *v.* BALTIMORE COUNTY, MARYLAND

[No. 69, September Term, 1977.]

*Per Curiam Order October 10, 1977.*

*Opinion Filed December 8, 1977.*

## PER CURIAM ORDER

The appellant having represented to the Court that the administrative hearing now in progress before the State Department of Health and Mental Hygiene to determine whether Baltimore County is entitled to a permit to operate its Parkton Landfill will be concluded by initial administrative agency decision within 60 days from this date, it is this 10th day of October, 1977

ORDERED, by the Court of Appeals of Maryland, that for reasons to be stated in an opinion to be filed later, the order of the Circuit. Court for Baltimore County, denying the interlocutory injunction, be, and it is hereby, vacated and the case remanded to that Court with directions that it forthwith issue an interlocutory injunction directing that Baltimore County cease all construction activities at the Parkton Landfill, and the disposing of all refuse at the Landfill, for a period of 60 days from the date of this Order, subject to the right of appellee Baltimore County to move to dissolve the interlocutory injunction in the event the evidentiary hearing before the administrative agency now in progress is not completed within 30 days from the date of this Order, and subject to the right of the appellant to apply for a continuance of the interlocutory injunction in the event that the permit is granted with conditions, or denied, at the expiration of the sixty day period; and it is further

ORDERED that each party pay its own costs; and it is further

ORDERED that the mandate shall issue forthwith.

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Randall M. Lutz* and *Warren K. Rich, Assistant Attorneys General,* with whom were *Francis B. Burch, Attorney General, Jeffrey E. Howard, Assistant Attorney General,* and *Earl G. Schaffer, Assistant Attorney General,* on the brief, for appellant.

*Peter Max Zimmerman, Assistant County Solicitor,* and *Harry S. Shapiro, Chief Assistant County Solicitor,* with whom was *J. Carroll Holzer, County Solicitor,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. ELDRIDGE, J., concurs in the result.

This appeal involves a dispute between two governmental parties which they adamantly refuse to resolve without unseemly legal combat. Specifically, the State Department of Health and Mental Hygiene appeals from an order denying its motion for an interlocutory injunction commanding appellee Baltimore County to cease construction of, and the disposing of refuse in, a sanitary landfill until a valid permit and necessary approvals are issued by the Department of Health. We concluded after oral argument on October 10, 1977, that the preliminary injunction should be granted, and that same day issued our mandate directing that the order of the Circuit Court for Baltimore County denying the injunction be vacated and the case remanded with directions to that court to issue the injunction for a sixty-day period. Our mandate further specified that the injunction could be dissolved or continued by the trial court on motion of either party, depending on the progress or results of the ongoing hearing being conducted by the Department of Health regarding the issuance of the permit. We now set out the reasons for our order.

We note at the outset that it is a rare instance in which a trial court's discretionary decision to grant or to deny a preliminary injunction will be disturbed by this Court; the present case, however, presents a peculiar conflux of circumstances, both factual and legal, some of which were not sufficiently brought to the trial court's attention, such that on our analysis of all the facts as they are revealed to us on

appeal, we think that one of those rare occasions has presented itself. The happenings recorded by the parties are multiple in nature and quite complex, and the inferences therefrom are hotly disputed, particularly where the motivations of the parties for various actions taken are concerned. We shall not here recite the complete background of the dispute which preceded the appellant's request for an injunction, however, as we deem most of it irrelevant to our decision, interesting though it may be as a case study in intragovernmental bureaucratic rivalry; we confine ourselves to relating those facts essential to a comprehension of the narrow issue presented for our determination.

The Secretary of Health and Mental Hygiene is charged by statute with the "general care of the sanitary interests of the people of this State . . .," Md. Code (1957, 1971 Repl. Vol.), Art. 43, §§ 1H, 2. The Code further provides that a system of refuse disposal for public use may not be installed, materially altered or extended, by either a public or private entity, without a permit from the Secretary to do so. *Id.* § 394 (a) (1977 Cum. Supp.). If it becomes necessary to make material changes in plans or specifications already properly approved, such changes must also be approved by the Secretary and a permit issued for them before they may be embodied in the actual construction. *Id.* On December 23, 1975, a permit was issued to Baltimore County authorizing it to construct and place in operation a sanitary landfill near Parkton in the northern portion of the county in accordance with plans and specifications received by the State Department of Health on February 14, 1975, and incorporated by reference in the permit.

In April of 1976, citizens residing in the area near the landfill site instituted suit in the Circuit Court for Baltimore County against both the county and the Department of Health, challenging the issuance of the permit and alleging, *inter alia,* that the design of the landfill would not protect the subterranean and surface waters from contamination and that the hearing held prior to issuance of the permit was procedurally defective in that it was not held in accordance with the necessary "contested case" standards, thereby

denying plaintiffs their statutory rights. Meanwhile, construction proceeded, and on June 10, 1976, a letter from the chief of the Department's Division of Solid Waste informed the county that recent inspections had disclosed limited areas of exposed bedrock within the floor of the first of five areas or "cells" in the landfill. The letter additionally indicated that the bedrock should be removed and replaced with a compacted soil and that still further floor compacting or treatment might be required.[1] The letter also recommended that, in view of this potential requirement, the county proceed to develop a plan for collection and disposal of any potential leachate migration,[2] and submit those plans to the Division for review.[3] The plans were duly submitted for this purpose in November of 1976; in February 1977 the department indicated to the county its conclusion that no further hearing would be required. Though the Department of Health was generally satisfied with the plans, it felt it advisable to forward them to the Water Resources Administration of the Department of Natural Resources for its analysis, since landfills potentially affect State waters. The Water Resources Administration, unlike the Department of Health, had reservations about the adequacy of the plans, and asked the county to agree to an additional administrative hearing before the Department of Health where the question could be further explored. Notwithstanding the fact that the county indicated on March 28 that it would decline to voluntarily submit to such a hearing, on May 9, 1977, a

---

1. The environmental plans for the landfill contemplated a minimum separation zone of five feet between the floor of the landfill and the highest recorded groundwater or bedrock.

2. The term "leachate," as the parties use it here, refers to "water that has percolated through the refuse in the landfill and has picked up soluble pollutants."

3. While the county maintains that it was *its* view that discovery of the bedrock called for further investigation and analysis, and that the department was merely concurring with the county when it recommended further consideration, we perceive no significance in that fact, assuming it to be true. Nor do we deem it of any importance whether the county voluntarily decided to provide an additional environmental safeguard in the form of an underdrain system designed to collect the leachate, or whether at that time the department thought the additional safeguard was unnecessary. This is so because detailed supplemental engineering plans were in fact transmitted to the department for its review.

hearing began,[4] with the county, according to the appellant, "voluntarily, but reluctantly, participating." [5]

On May 13, the county was informed by the chief of the Department of Health's Division of Solid Waste that its proposed revised plans for construction of cell #1 had not yet been approved and that all construction in that cell must cease pending acceptance of these plans. Construction continued, however, and on June 21 the county began depositing refuse in the landfill; on that same date the director of the Environmental Health Administration of the Department of Health issued an order revoking the original permit and directing that all construction and use cease.[6] The county

---

4. The county is much incensed by the manner in which the decision to hold a second hearing was apparently reached. The record contains correspondence between the Department of Health and the attorneys for citizen-plaintiffs in a suit filed in Anne Arundel County against the Department of Natural Resources, which suit apparently raised the question whether a groundwater discharge permit from the Department of Natural Resources was independently required in connection with the discharge of leachate at the landfill. This correspondence indicated that those plaintiffs would dismiss that suit if a full adjudicatory hearing were held in accord with several conditions, among them that the department would revoke or stay the December 1975 permit if the county refused to refrain from further construction at Parkton until final action on the permits; these terms were agreed to by the Department of Health, without the knowledge or participation of the county. In addition, the county took the position that the Department of Natural Resources ought not to be in any way involved in regulating the installation of the landfill. Be all that as it may, if the changes made in approved plans for the Parkton landfill were material, so that a permit for such changes is required by section 394, it is at least arguable that under section 394A a hearing would be required:

> Before issuing a permit for a landfill refuse disposal system under § 394, Article 43 of the Annotated Code of Maryland, the State Department of Health shall set a day for a public hearing on the request. [Md. Code (1957, 1971 Repl. Vol.), Art. 43, § 394A.]

The trial court observed that the plans in the original permit were not strictly complied with, but did not determine whether the deviation was material. In any event we do not think that the motivations alleged for requiring the hearing have any bearing on whether injunctive relief should have been granted under the circumstances before us here.

5. As of the date of oral argument in this case, October 10, 1977, the hearing had not yet been completed. Appellant in its brief filed on August 9 indicated that, since the inception of the hearing on May 9, there had been 19 days devoted to that task, and that five additional days would be needed. One hardly need point out that the county's — indeed both parties' — insistence on the dire urgency of a conclusion to this matter is not reflected in their track record for completion of the hearings.

6. Whether or not the director had the authority to revoke a permit issued by the Secretary, and whether or not the order contravened the procedural requirements of Md. Code (1957, 1971 Repl. Vol.), Art. 43, § 403, as contended

ignored that order, and on June 24 the Department of Health, although a defendant in the April 1976 suit brought by citizen-plaintiffs against it and the county, joined with the plaintiffs in filing, in that same action, a motion for injunctive relief which the trial judge orally indicated on the same day he would deny. A written order to that effect was filed on August 17, 1977,[7] and the Department of Health, but not the citizens, appealed. We granted certiorari.

While there is "[n]o principle ... better established, than that the granting or refusing of a writ of injunction, is a matter resting in the sound discretion of the court," *Shoemaker v. Mechanics Bank,* 31 Md. 396, 398 (1869); *see Kahl v. Con. Gas,.El. Lt. & Power Co.,* 189 Md. 655, 658, 57 A. 2d 331, 332-33 (1948), it is also true that this discretion must be exercised by the chancellor upon a consideration of all the circumstances of the case. *McKeever v. Realty Corp.,* 183 Md. 216, 225, 37 A. 2d 305, 310 (1944); *Williams v. M. & C.C. of Balto.,* 128 Md. 140, 157-58, 97 A. 140, 145 (1916); E. Miller, *Equity Procedure* § 574, at 682 (1897). It is frequently said that a proper exercise of discretion requires the court to consider four factors: likelihood of success on the merits; the "balance of convenience"; irreparable injury, which can include the necessity to maintain the status quo; and, where appropriate, the public interest. *See, e.g., Wieck v. Sterenbuch,* 350 A. 2d 384, 387 & n. 3 (D.C. 1976) (citation of authorities). And it is the complainant who has the burden of presenting a case justifying the granting of a preliminary injunction, *Baltimore v. Warren Manuf. Co.,* 59 Md. 96, 105 (1882), so that if the facts as stated in the bill of complaint or, when appropriate, as shown by the evidence, are not "full and sufficiently definite and clear, in support of the right asserted, and that such right has been violated," the court will not order preliminary relief. *Id.* Here, though it may be

---

by the appellee, is, on our view of the case, irrelevant to the only issue before us now — whether the county should have been temporarily enjoined from dumping refuse at the landfill pending a decision on these and other issues.

7. This delay was occasioned by the fact that the department had noted an appeal to the Court of Special Appeals on July 5, 1977, and although we had granted certiorari to determine the propriety of the refusal to issue the injunction, we were compelled to dismiss the appeal as jurisdictionally defective since it had been taken prior to the signing of the decree.

that the chancellor's discretion was reasonably exercised in view of the manner in which the case was presented to him, since he was not made aware of a fact presented to this Court at oral argument — that the need for the injunction was only of short duration — he had no knowledge of an important circumstance which was crucial to a proper evaluation of the traditional factors, and it is for this reason that we reverse his ruling.[8]

Preliminarily, we observe that it has been held, and we accept the doctrine, that in litigation between the government and a private party, the court is not bound by the strict requirements of traditional equity as developed in private litigation:

> The United States ... is not bound to conform with the requirements of private litigation when it seeks the aid of the courts to give effect to the policy of Congress as manifested in a statute. It is a familiar doctrine that an injunction is an appropriate means for the enforcement of an Act of Congress when it is in the public interest. [*Shafer v. United States,* 229 F. 2d 124, 128 (4th Cir. 1956).]

*See Federal Mar. Com'n v. Australia/U.S. Atlantic & Gulf Conf.,* 337 F. Supp. 1032, 1038 (S.D. N.Y. 1972); *United States v. Pennzoil Company,* 252 F. Supp. 962, 986 (W.D. Pa. 1965) (in anti-trust merger case, showing of injury to corporate defendants by granting preliminary injunction would have to be so proportionately persuasive as to submerge principle that status of public interest and not requirements of private litigation measure the propriety of relief; government not required to show hardship or injury to the public); *Falkner v. Memorial Gardens Association,* 298 S.W.2d 934, 943 (Tex.Civ.App. 1957); *cf. Space Aero v. Darling,* 238 Md. 93, 128, 208 A. 2d 74 and 699, 92 (1965) (with regard to the scope of an injunction, courts of equity "may, and fre-

---

8. Although the county's brief included a motion to dismiss this appeal on four grounds, at oral argument it expressed its desire to have the appeal decided on the merits, and we think this tantamount to a withdrawal of the motion. In any event, we find none of the grounds stated to have any substance.

quently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go where only private interests are involved") (quoting *Virginian Ry. v. Federation,* 300 U. S. 515, 552, 57 S. Ct. 592, 81 L. Ed. 789 (1937), *cert. denied,* 382 U. S. 843 (1965). We think that this doctrine is to an even greater degree applicable where, as here, the primary antagonists are two government entities. With this in mind, the principle which emerges from our analysis of the applicability of the four factors noted above is this: Where two governmental parties, both presumptively acting in the public interest, are in irreconcilable conflict in the execution of their governmental responsibilities, a court of equity can usually best resolve the impasse by issuing a temporary injunction where that is necessary to preserve the status quo [9] until a decision on the merits is rendered, so long as that course does not result in greater harm to the public interest than would a refusal to interfere. Thus in *Pr. George's Co. v. Md.-Nat'l Cap.,* 269 Md. 202, 306 A. 2d 223, *cert. denied,* 414 U. S. 1068 (1973), we indicated that declaratory relief was appropriate where public agencies are at loggerheads, *id.* at 209-10 [228], and further concluded that "[t]he controversy was so 'ripe' for declaratory relief that the chancellor . . . properly issued the temporary injunction to prevent, *pendente lite,* grave injury to the Commission's park and planning functions and recreational activities . . . by [proposed actions of] the County Executive." *Id.* at 214 [230].

In our view, the standard we have just enunciated flows naturally from any attempt to apply the four factors in a case of this nature. Initially, we would observe that neither likelihood of success on the merits nor the "balance of convenience" factor is particularly relevant here, though we do not suggest that they could never be significant in a suit between governmental entities. As to likelihood of success, neither the parties nor the court gave the factor any attention, and we would agree that to do so would be inappropriate in

---

9. The status quo to be preserved by a preliminary injunction has been described as "the last, actual, peaceable, noncontested status which preceded the pending controversy." 43 C.J.S. *Injunctions* § 17, at 428 & n. 90 (1945).

this case. This is so because what is sought here is merely an opportunity to ascertain, through the hearing process, whether the county should be allowed to proceed with the landfill, without having that opportunity made meaningless by the continued dumping which inhibits the State's ability to inspect and which could adversely affect the environment years in the future if the system proved to be deficient in some respect.

As to the principle of comparative hardship or "balance of convenience," a court in the ordinary case will consider whether greater injury would be done to the defendant by granting the injunction than would result to the plaintiff from its refusal. 43 C.J.S. *Injunctions* § 30, at 464 & n. 86 (1945); *see, e.g., Schnepfe v. Consol. Gas Etc. Co.,* 164 Md. 630, 635, 165 A. 889, 891 (1933); *Steamboat Co. v. Starr M. P. Church,* 149 Md. 163, 180, 130 A. 46, 52 (1925); *Smith v. Myers,* 130 Md. 64, 67, 99 A. 938, 940 (1917). In addition, the court will weigh the injury or inconvenience that may result to the public upon the grant of an injunction, *Schnepfe v. Consol. Gas Etc. Co., supra* at 636 [891], so that when the issuance of such a writ would cause serious public inconvenience without a corresponding advantage to the plaintiff, the application will be refused. *Id.* at 635-36 [891]; 43 C.J.S. *Injunctions* § 31, at 466 & n. 93 (1945). In a suit between two governmental parties, however, relating to the performance of their responsibilities in the public interest, these comparative principles have no application, and the *only* interest to be considered is the public interest.

We are left, then, with only two factors to be considered in this case — irreparable injury and the public interest. The county insists that the movant-department "must present strong *prima facie* evidence of alleged irreparable anticipatory injury to public health . . .," and that it has not done so. In this connection, the record discloses that the department merely alleged that Baltimore County was constructing and using the landfill in clear violation of law; convinced that the violation of the statute alone sufficed to require the issuance of a preliminary injunction,[10] it alleged

---

10. On the view we take of this case, we need not consider the appellant's contention in this regard.

irreparable injury only in the most conclusory terms. As a natural consequence of the manner in which the department presented its case, the trial court was led to resolve the preliminary injunction issue by balancing "the integrity of the permit system . . . against the need of the County to get rid of its refuse and garbage," concluding that the former had no equitable appeal when opposed to the "actual and practical need" of the county to dispose of its refuse. We conclude, however, that the factor which should have been balanced against the county's refuse disposal needs was the destruction of the department's ability to carry out its responsibility to assess the adequacy of the landfill design in preventing future pollution.

Furthermore, it is quite clear from our cases that a preliminary injunction will lie when it is necessary to preserve the status quo. *Tyler v. Secretary of State,* 230 Md. 18, 20, 185 A. 2d 385, 386 (1962); *Dolan v. Motion Picture Etc. Union,* 206 Md. 256, 258-60, 111 A. 2d 462, 463 (1955) (in suit to enjoin union from expelling plaintiffs, alleging threat of loss of jobs and other property rights, chancellor should have issued a preliminary injunction pending a decision on his own jurisdiction in order to preserve status quo); *Kahl v. Con. Gas, El. Lt. & Power Co.,* 189 Md. 655, 658, 57 A. 2d 331, 332-33 (1948) (no abuse in refusing preliminary injunction in view of defendant's stipulation and agreement to maintain the status quo); *Martin v. United Slate Wkrs. Ass'n,* 189 Md. 383, 388, 56 A. 2d 28, 30 (1947) (order refusing to dissolve injunction reversed for lack of indispensable party; effect of injunction was to change the status quo by assisting the plaintiff to gain possession of assets belonging not to defendants but to a party not before the court); 43 C.J.S. *Injunctions* § 2, at 406 (1945) (sole object of preliminary injunction is to preserve subject in controversy in its then existing condition and to prevent any act whereby right in controversy may be materially injured or endangered). Indeed, the primary justification for the issuance of a preliminary injunction is to prevent irreparable injury "so as to preserve the court's ability to render a meaningful decision on the merits," *Canal Authority v. Callaway,* 489 F. 2d 567, 576 (5th Cir. 1974),

*quoted in Wieck v. Sterenbuch,* 350 A. 2d 384, 387-88 (D.C. 1976), and it has been pointed out that this maxim — that a preliminary injunction is issued to preserve the status quo — is "an expression of the same concern for the prevention of interim injury which would undermine the final disposition of a case on the merits." *Wieck v. Sterenbuch, supra,* 350 A. 2d at 388 n. 4 (citing 7 *Moore's Federal Practice* ¶ 65.04[1] (2d ed. 1975)); *see* 43 C.J.S. *Injunctions* § 17, at 427 (1945) (court will grant preliminary injunction when one of the parties is committing an act "that will cause irreparable injury *or* destroy the status quo of the controversy before a full hearing can be had . . .") (emphasis added). Since it was the status quo that was sought to be preserved, and since the county does not contend that, without the intervention of the court, it would have been maintained, we think this factor, in a case of the nature presented here, should have weighed very heavily in the trial court's evaluation of the request for interim injunctive relief.

Finally, the trial court was bound to consider, as it did, the public interest. We recognize that there is a certain "equitable appeal" in the county's action here, since it is clear that its capacity to dispose of solid waste is becoming more limited each day; consequently it is understandable that the appellee is loath to brook further delay. And likewise we recognize, from the appellant's own admission, that the difference of opinion among the experts in regard to the matters being resolved in the ongoing hearing is apparently slight and "could be resolved easily"; moreover, we are aware that the department's concern as evinced before the trial court seemed primarily directed toward preventing the county from disregarding its permit process. Nonetheless it is important to note that the injunction we ordered the trial court to issue is for sixty days only, and that it appears that the matter can be resolved in that time. It is also clear that the county *can* dispose of its solid waste in alternative locations for this limited period of time. In view of these facts, the public interest factor also should have been resolved in the State's favor, and the trial court should not have required, as it apparently did, a "reasonable" or "substantial" probability of

a public health hazard. We think that the State Department of Health is entitled, pursuant to its statutory responsibilities, to have an opportunity to assure itself that there is no reasonable possibility of future pollution by the leachate, where that can be done with sufficient dispatch that significant countervailing injury to the public welfare does not come into play.

Since, for the mentioned reasons, we concluded that both of the factors to which the court's decision in a case of this nature must address itself should have been resolved in the appellant's favor, we found it necessary to reverse the trial court's judgment and order the issuance of the injunction.